**FIRST NATIONAL BANK OF SOUTH CAROLINA, Appellee,**

v.

**UNITED STATES of America, Appellant.**

No. 76–1943.

United States Court of Appeals, Fourth Circuit.

Argued April 5, 1977

Decided July 8, 1977.

Arthur L. Bailey, Atty., U. S. Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Myron C. Baum, Acting Asst. Atty. Gen., Gilbert E. Andrews, William A. Friedlander, Attys., U. S. Dept. of Justice, Washington, D. C., and Mark W. Buyck, Jr., U. S. Atty., Columbia, S. C., on brief), for appellant.

J. Donald Dial, Jr., Columbia, S. C. (Boyd, Knowlton, Tate & Finlay, Columbia, S. C., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and CRAVEN * and WIDENER, Circuit Judges.

PER CURIAM:

In 1968 First National Bank of South Carolina deducted as an ordinary and necessary business expense under § 162(a) of the Internal Revenue Code[1] a $63,350 assessment paid to Atlantic States Bankcard Association, Inc. (ASBA). The Commissioner of the Internal Revenue Service disallowed the deduction, saying that the payment was a membership fee which must be capitalized, and accordingly he levied additional taxes and interest totalling $42,005.73. In a suit to recover this payment, the District Court found the assessment currently deductible, entered summary judgment for the Bank April 7, 1976 and ordered the Commissioner to refund the $42,005.73 plus interest. The Commissioner appeals.

The Bank is a nationally chartered, "full-service" bank. In 1968 it decided to enter the credit card field, hoping to earn a greater return on small, low-profit consumer loans and to remain competitive with other "full-service" banks. On July 31, 1968 the Bank obtained the right to market the Master Charge card in its area.

Taxpayer and approximately 21 other banks entering the credit card market incorporated the ASBA October 15, 1968 as a

---

* Circuit Judge Craven expressed his concurrence in this decision, but died before the opinion was written.

1. This reads in pertinent part:
   "§ 162 Trade or business expenses

   (a) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business . . . ."

nonprofit association to operate a computerized system for record keeping, authorization and billing of credit card transactions. As members of the Association, the banks own no stock, have no interest in ASBA's assets and are not entitled to any distribution of profits. Membership is non-transferrable. Upon its dissolution, ASBA's assets must be paid over to a tax-exempt charitable organization.

This cooperative venture was undertaken to avoid duplication of costs and achieve economies of scale in acquiring computer services essential in credit card operations. The ASBA began operating March 11, 1969. Current expenses were met by charging members a set fee for each transaction.

Prior to March 11, however, ASBA incurred substantial pre-operational expenses, including salaries, office and equipment rentals, general office expenses, advertising costs and fees paid to a consulting firm. To meet these start-up costs, member banks were assessed, as the best available measure of expected future use, an amount calculated on the basis of their total deposits. First National Bank paid ASBA $9,050 in August 1968. Three additional assessments of $18,100 each were made December 1 and December 24, 1968 for a total of $63,350.

The sole question is whether these assessments were deductible in 1968 as ordinary and necessary business expenses under § 162. We hold they were. In *Commissioner v. Lincoln Savings and Loan Ass'n*, 403 U.S. 345, 91 S.Ct. 1893, 29 L.Ed.2d 519 (1971), the Court, identifying and distinguishing a capital expenditure, stated:

> "What is important and controlling, we feel, is that the 404(d) payment serves to create or enhance for Lincoln what is essentially a separate and distinct additional asset and that, as an inevitable consequence, the payment is capital in nature and not an expense, let alone an ordinary expense, deductible under § 162(a) in the absence of other factors not established here." 403 U.S. at 354, 91 S.Ct. at 1899.

Membership in ASBA is not a separate and distinct additional asset created or enhanced by the payments in question. The assessments were made solely to meet *preoperational expenses*. Had the Bank set up an in-house computer system, there would be no quarrel over the deductibility of amounts expended for salaries, office expenses, rentals, advertising and the like. Forming a nonprofit cooperative association instead to minimize costs does not alter the character of the expenditures.

This conclusion is supported by Revenue Ruling 58–534, 1958–2 C.B. 125. There a group of taxpayers organized a nonprofit, noncapital stock corporation for the purpose of rendering services necessary to the business activities of the organizers. Each paid an assessment to the corporation so that it could meet operating expenses and purchase equipment. The IRS ruled that

> "[t]he portion of assessments utilized by the nonprofit corporation to meet its current operating expenses would constitute payment for services rendered by it to the organizers and would be deductible pro rata by them as ordinary and necessary business expenses, under section 162(a) of the Code."

Indistinguishable from the case at bar is *Colorado Springs National Bank v. United States*, 505 F.2d 1185 (10 Cir. 1974). Preoperational computer service and assessment fees paid by a member bank to the Mountain States Bankcard Association (MSBA) were held to be deductible under § 162 as ordinary and necessary business expenses. The MSBA, like the Association here, was a nonprofit corporation organized to handle the Master Charge program for its members. Grouping the MSBA assessments with other preoperational expenses, the Court concluded that the test in *Lincoln Savings*—that a *capital* expenditure creates or enhances a separate and distinct additional asset—was not met. The Court states:

> "The start-up expenditures here challenged did not create a property interest. They produced nothing corporeal or salable. They are recurring. At the most they introduced a more efficient method of conducting an old business." 505 F.2d at 1192.

Unable to say the District Court erred, we affirm on its opinion. *First National Bank of South Carolina v. U. S. A.*, 413 F.Supp. 1107 (D.S.C.1976).

Affirmed.