MADISON GAS AND ELECTRIC
COMPANY, Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE, Appellee.

No. 80–1380.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 23, 1980.
Decided Oct. 27, 1980.

Steven E. Keane, Milwaukee, Wis., for appellant.

Karl Fryzel, Tax Division, Dept. of Justice, Washington, D. C., for appellee.

Before CUMMINGS and WOOD, Circuit Judges, and CAMPBELL, Senior District Judge.*

CUMMINGS, Circuit Judge.

This is an action under 26 U.S.C. § 7422 for the refund of federal income taxes. The question is whether certain training and related expenses incurred by a public utility in the expansion of its generating capacity through the joint construction and operation of a nuclear plant with two other utilities are deductible as ordinary and necessary expenses in the years of payment or are non–deductible pre–operating capital expenditures of a new partnership venture. The Tax Court in an opinion reported at 72 T.C. 521 held that they are non–deductible capital expenditures. We affirm.

I

All relevant facts have been stipulated by the parties (App. 8–41) and found and set forth at length by the Tax Court. We find it necessary to summarize them only briefly. Taxpayer Madison Gas and Electric Co. (MGE), a Wisconsin corporation, is an operating public utility which has been engaged since 1896 in the production, purchase, transmission and distribution of electricity and the purchase and distribution of natural gas. MGE is subject to the jurisdiction and regulation of the Public Service Commission of Wisconsin (PSC) and the Nuclear Regulatory Commission. The Federal Energy Regulatory Commission (FERC) also has or may have jurisdiction over MGE.

MGE is required to furnish reasonably adequate service and facilities within its service area at rates found reasonable and just by the PSC. During 1969 and 1970, the tax years here in issue, MGE rendered service to some 73,000 residential and commercial customers in a service area of approximately 200 square miles in Dane County, Wisconsin. MGE also sells a small percentage of its electrical power to other utilities in Wisconsin. Its primary responsibility, however, is to its customers in the service area. The number of customers within that area has grown rapidly and continuously during the past 25 years, and the customer demand for electricity has increased with the expansion of commercial and industrial accounts, the substitution of electricity for other forms of energy, and the increasing prevalence of high–energy devices such as air–conditioning units. Thus at the time of trial MGE was servicing almost 90,000 residential, commercial and industrial customers.

MGE has over the years kept pace with the increasing demand for electrical power and provided it at reasonable rates by expanding the generating capacity of its facilities, contracting for the purchase and sale of excess electrical power, interconnecting transmission facilities with those of other Wisconsin utilities, and finally by building and operating additional facilities in conjunction with other utilities. Expenses incurred in connection with one of these joint ventures is the subject of the present suit.

On February 2, 1967, MGE entered into an agreement, entitled "Joint Power Supply Agreement" (Agreement) (App. 42–59), with Wisconsin Public Service Corporation (WPS) and Wisconsin Power and Light Co. (WPL) under which the three utilities agreed, *inter alia*, to construct and own together a nuclear generating plant now known as the Kewaunee Nuclear Power Plant (Plant). Under the Agreement, the Plant is owned by MGE, WPS and WPL as tenants–in–common with undivided ownership interests of 17.8%, 41.2% and 41.0% respectively. Electricity produced by the Plant is distributed to each of the utilities in proportion to their ownership interests. Each utility sells or uses its share of the power as it does power produced by its own individually owned facilities, and the profits thereby earned by MGE contribute only to MGE's individual profits. No portion of the power generated at the Plant is offered for sale by the utilities collectively, and the

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

Plant is not recognized by the relevant regulatory bodies as a separate utility licensed to sell electricity. Each utility also pays a portion of all expenditures for operation, maintenance and repair of the Plant corresponding exactly to its respective share of ownership. Under utility accounting procedures mandated by the PSC and the FERC, these expenses are combined with and treated in the same manner by MGE as expenses from its individually owned facilities. The ownership and operation of the Plant by MGE, WPS and WPL is regarded by the PSC and the FERC as a tenancy–in–common. It was the intention of the utilities to create only a co–tenancy and not a partnership and to be taxed as co–tenants and not as partners.

In its 1969 and 1970 taxable years, MGE incurred certain expenses relating to the nuclear training of WPS employees, the establishment of internal procedures and guidelines for plant operation and maintenance, employee hiring activities, nuclear field management, environmental activities and the purchase of certain spare parts (App. 116–126). MGE had to incur these expenses in order to carry out its Plant activities. Pursuant to order of the PSC, MGE was required to amortize training expenses, net of income taxes, over a 60–month period from the date of commercial operation of the Plant, a date occurring after those in issue here, and the other non–construction expenses associated with the Plant, net of income taxes, over a three–year period beginning January 1, 1973. MGE did not deduct the expenses described above on its tax returns for 1969 and 1970, but in the Tax Court claimed a deduction for them by amendment to its refund petition in the total amounts of $33,-418.45 and $114,434.27 for 1969 and 1970 respectively.

MGE's position was, and is, that the claimed expenses were currently deductible under Section 162(a) of the Internal Revenue Code of 1954 (Code) as ordinary and necessary business expenses. The Commissioner's position was, and is, that the claimed expenses were non-deductible capital expenditures. The Tax Court agreed with the Commissioner, holding that the operation of the Plant by MGE, WPS and WPL is a partnership within the meaning of Section 7701(a)(2) of the Code, that the expenses in question were incurred not in the carrying out of an existing business but as part of the start–up costs of the new partnership venture, and that the expenses were therefore not currently deductible but must be capitalized under Section 263(a) of the Code. MGE appeals from this judgment, arguing that its arrangement with WPS and WPL is not a partnership within the meaning of the Code and, alternatively, that even if it is a partnership the expenses are currently deductible.

## II

The threshold issue is whether MGE's joint venture with WPS and WPL is a tax partnership. The Commissioner concedes that if it is not, the expenses are currently deductible under Section 162(a).[1] A partnership for federal tax purposes is defined by the Code in Section 7701(a)(2), which provides in pertinent part:

"The term 'partnership' includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust estate or a corporation."

MGE's arrangement with WPS and WPL in connection with the Plant clearly establishes an unincorporated organization carrying on a "business, financial operation, or venture" and therefore falls within the literal statutory definition of a partnership. The arrangement is, of course, not taken out of this classification simply because the three utilities intended to be taxed only as a co–tenancy and not as a partnership. While it is well–settled that mere co–own-

---

1. The Tax Court accepted this concession for the purposes of this case without deciding its validity (72 T.C. at 558).

ership of property does not create a tax partnership, see, e. g., *Estate of Appleby v. Commissioner*, 41 B.T.A. 18 (1940), co–owners may also be partners if they or their agents carry on the requisite "degree of business activities." *Powell v. Commissioner*, 26 T.C.M. 161 (1967); *Hahn v. Commissioner*, 22 T.C. 212 (1954).

MGE's argument is that a co–tenancy does not meet the business activities test of partnership status unless the co–tenants anticipate the earning and sharing of a single joint cash profit from their joint activity. Because its common venture with WPS and WPL does not result in the division of cash profits from joint marketing, MGE contends that the venture constitutes only a co–tenancy coupled with an expense–sharing arrangement and not a tax partnership. The Tax Court held that the Code definition of partnership does not require joint venturers to share in a single joint cash profit and that to the extent that a profit motive is required by the Code it is met here by the distribution of profits in kind. We agree.

The definition of partnership in Section 7701(a)(2) was added to the Code by Section 1111(a) of the Revenue Act of 1932 and first appeared in Section 3797(a)(2) of the 1939 Code. The Congressional Reports accompanying the 1932 Act make clear, in largely identical language, that Congress intended to broaden the definition of partnership for federal tax purposes to include a number of arrangements, such as joint ventures, which were not partnerships under state law. H.P.Rep. No. 708, 72d Cong., 1st Sess., 53 (1932); S.Rep. No. 665, 72d Cong., 1st Sess., 59 (1932). In so doing, they briefly discuss the advantages of requiring a partnership return for joint venturers rather than leaving the sole responsibility for reporting annual gains and losses on the individual members. MGE invites us to infer from these discussions that Congress contemplat-

ed inclusion only of those joint ventures that are capable of producing joint cash gains and losses. But even if we were inclined to narrow the statutory language on the basis of such slender evidence, the subsequent legislative history would dissuade us from reaching MGE's suggested construction.

In *Bentex Oil Corp. v. Commissioner*, 20 T.C. 565 (1953), the Tax Court held that an unincorporated organization formed to extract oil under an operating agreement which called for distribution of oil in kind was a partnership within the meaning of Section 3797(a)(2) of the 1939 Code. The *Bentex* joint venture is not distinguishable from that presented here in any meaningful way. The co–owners there, as here, shared the expenses of production but sold their shares of the production individually. Following *Bentex*, Congress reenacted the definition of partnership in Section 3797(a)(2) of the 1939 Code without change as Section 7701(a)(2) of the 1954 Code. In addition, it repeated the definition verbatim in Section 761(a), which permits certain qualifying organizations to elect to be excluded from application of some or all of the special Subchapter K partnership provisions. A qualifying corporation is one which is used

"(1) for investment purposes only and not for the active conduct of a business, or

"(2) for the joint production, extraction, or use of property, but not for the purpose of selling services or property produced or extracted, if the income of the members of the organization may be adequately determined without the computation of partnership taxable income."

In short, Section 761(a) allows unincorporated associations such as the Bentex venture and the one in issue here, which fall within the statutory definition of partnership, to elect out of Subchapter K.[2] The Section

---

**2.** MGE argues that in enacting Section 761(a) Congress had in mind only oil, gas and mineral ventures acting under operating agreements and that therefore the Section should not be automatically construed to include an operating agreement for the production of electricity. In support of this position, MGE inexplicably

cites Taubman, *Oil and Gas Partnerships and Section 761(a)*, 12 Tax L.Rev. 49 (1956), in which the author expressly states:

"Congress thus attempted to establish a workable formula which would be valid not only for oil and gas, but all types of operating agreements, as well as the related and equal-

has generally been interpreted, in the absence of any legislative history, as approving the *Bentex* decision while providing relief from certain resulting hardships. See, *e. g.,* Williams, *Joint Operation of Jointly Owned Natural Resources,* 10 Oil and Gas Quarterly 149 (1961); Taubman, *Oil and Gas Partnerships and Section 761(a),* 12 Tax L.Rev. 49 (1956). This interpretation is surely correct for, as the Tax Court observed:

> "[i]f distribution in kind of jointly produced property was enough to avoid partnership status, we do not see how such distribution could be used as a test for election to be excluded from the partnership provisions of subchapter K" (72 T.C. at 563).

MGE also relies on Treasury Regulation Sections 301.7701–3 and 1.761–1(a) (26 C.F.R.) to support its argument that joint marketing is a *sine qua non* of partnership status. These Sections state in identical language that tenants in common

> "may be partners if they actively carry on a trade, business, financial operations, or venture and divided the profits thereof."

In addition, MGE cites to us case law referring to a joint profit motive as a characteristic of partnerships.[3] See, *e. g., Commissioner v. Tower,* 327 U.S. 280, 286, 66 S.Ct.

532, 535, 90 L.Ed. 670 ("community of interest in the profits and losses"); *Ian Allison v. Commissioner,* 35 T.C.M. 1069 (1976) ("an agreement to share profits"). Neither the above–quoted Treasury Regulation Sections nor the case law distinguish between the division of cash profits and the division of in–kind profits, and none of the cited cases involved in–kind profits. Moreover, while distribution of profits in–kind may be an uncommon business arrangement, recognition of such arrangements as tax partnerships is not novel. See, *e. g., Bentex, supra; Luckey v. Commissioner,* 334 F.2d 719 (9th Cir. 1965); *Bryant v. Commissioner,* 46 T.C. 848, affirmed, 399 F.2d 800 (5th Cir. 1968).[4]

The practical reality of the venture in issue here is that jointly produced electricity is distributed to MGE and the other two utilities in direct proportion to their ownership interest for resale to consumers in their service areas or to other utilities. The difference between the market value of MGE's share of that electricity and MGE's share of the cost of production obviously represents a profit. Just as obviously, the three utilities joined together in the construction and operation of the Plant with the anticipation of realizing these profits. The fact that the profits are not realized in cash until after the electricity has been channeled through

ly difficult field of investment." 12 Tax L.Rev. 49, 67.

The three utilities here in fact did file a partnership return and election–out of Subchapter K (App. 19, 41). The Tax Court held that the filing of a partnership return and election–out under Section 761(a) are not admissions of partnership status (72 T.C. at 558). MGE did not argue below that election–out caused the organization not to be a partnership for non–Subchapter K tax purposes, and the Tax Court declined to decide this possible issue (72 T.C. at 559 n. 9). In its alternative position here, however, MGE contends that the holding below is "inconsistent with the purpose" of Section 761(a) (Br. 41). This argument is indistinguishable from an argument that election–out under Section 761(a) negates partnership status except where the Code explicitly provides to the contrary. Since the issue was not raised and decided below, we do not address it here. We note, however, that Section 7701(a)(2) explicitly states that an organization which is a partnership as defined in that Section is a partnership for the purposes of the entire Code, where-

as Section 761(a) provides only for election–out of Subchapter K.

**3.** The Commissioner takes the position that the presence of a joint profit motive is merely one factor to be considered in determining partnership status, while MGE argues that it is a necessary element. Because we find a joint profit motive here, albeit for in–kind profits, we need not resolve this dispute.

**4.** See generally, McKee, Nelson & Whitmire, *Federal Taxation of Partnerships and Partners,* par. 3.02, pp. 3–8, in which the authors conclude: "A partnership may result from a joint extraction or production agreement among co–owners of mineral property or production facilities, even though the co–owners separately take and sell (or reserve the right to take and sell) their shares of production. * * * Despite the absence of an objective to earn a joint cash profit, these ventures are generally considered partnerships" (footnotes omitted).

the individual facilities of each participant does not negate their joint profit motive nor make the venture a mere expense–sharing arrangement.[5] We hold therefore that MGE's joint venture with WPS and WPL constitutes a partnership within the meaning of Sections 7701(a)(2) and 761(a) of the Code.

### III

On the ultimate issue in this case, the Tax Court held that the claimed expenses were incurred as pre–operational costs of the partnership venture and therefore under settled law were non–deductible capital expenditures. See *Richmond Television Corp. v. United States*, 345 F.2d 901 (4th Cir. 1965), vacated on other grounds, 382 U.S. 68, 86 S.Ct. 233, 15 L.Ed.2d 143. MGE argues that this holding elevates form over substance in that even if the operating arrangement is technically a tax partnership, the claimed expenses were in actuality simply ordinary and necessary expenses of expanding its existing business. MGE asks us therefore to ignore the partnership entity as lacking economic substance.

In support of its position, MGE relies heavily on *First National Bank of South Carolina v. United States*, 558 F.2d 721 (4th Cir. 1977); *First Security Bank of Idaho N. A. v. Commissioner*, 63 T.C. 644 (1975); and *Colorado Springs National Bank v. United States*, 505 F.2d 1185 (10th Cir. 1974). In those cases, the respective courts held that the initial costs incurred by banks participating in non–profit associations set up as clearinghouses for a credit card system were deductible as ordinary and necessary business expenses because participation in a credit card system was not a new business venture but merely a new way of conducting an old business. These cases are not on point. Participation in the credit card associations had no extrinsic or marketable value, created no property right and did not entitle the participants to any distribution

of profits, either cash or in–kind. There was no suggestion in those cases whatsoever that the banks had by participating in the association created a new partnership venture with other banks, and the courts were not asked to ignore partnership status. The question was whether the costs were necessary and ordinary current expenses or capital investments in future economic benefits.

Here MGE, WPS and WPL are engaged in the joint production of electricity for resale, a joint venture for profit. Because they were each already in the business of selling electricity, it can, of course, be argued that the partnership venture itself is an extension or expansion of their existing businesses. It does not follow from this though that we should ignore the partnership as lacking economic substance. Such reasoning would lead to the absurd conclusion that any partnership established to do collectively what its participants formerly did individually or continue to do individually outside the partnership lacks economic substance and should not be treated as a partnership for tax purposes.

At bottom, MGE's position is that it is not sound policy to treat the entity here as a partnership. But we are not free to rewrite the tax laws, whatever the merits of MGE's position. Under the Internal Revenue Code the joint venture here is a partnership and the expenses were non–deductible, pre–operational start–up costs of the partnership venture. Accordingly, the judgment of the Tax Court is affirmed.

---

5. Treasury Regulation Sections 301.7701–3 and 1.761–1(a) (26 C.F.R.) state that a "joint undertaking merely to share expenses is not a partnership," and go on to give the example of neighboring landowners who jointly construct a ditch "merely to drain surface water from their properties." We agree with the Tax Court that the venture here is "in no way comparable to the joint construction of a drainage ditch" (72 T.C. at 560).