KEITH AND MOANA KING, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
King v. Commissioner
Docket No. 5210-80.
United States Tax Court
T.C. Memo 1983-148; 1983 Tax Ct. Memo LEXIS 643; 45 T.C.M. (CCH) 1036; T.C.M. (RIA) 83148; March 21, 1983. James H. Stethem, for the petitioners. Mary Ellen Weber, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined a deficiency in petitioners' income tax of $9,676.77, together with an addition to tax under section 6653(a)[1] in the amount of $483.84 for the calendar year 1976. After *644 concessions, the issues remaining for our determination are (a) whether certain payments made in 1976 by a partnership of which petitioner Keith King was a limited partner were payments of ordinary and necessary business expenses of the partnership in that year, producing a net operating loss of which petitioners were entitled to deduct a portion in their individual returns in accordance with Keith King's partnership share, contrary to respondent's determination; and (b) whether petitioners are liable for the addition to tax under section 6653(a). Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. FINDINGS OF FACT Keith King ("petitioner" hereinafter) and Moana King are husband and wife who resided in Xenia, Ohio at the time they filed their petition in this case. [2] They filed a joint Federal income tax return for the calendar year *645 1976 with the Internal Revenue Service at Cincinnati, Ohio. In the year 1976, petitioner was a self-employed painting contractor, conducting his business in and around Xenia, Ohio. During that same year, and for several years prior thereto, Plasti - Form, Inc. (hereinafter "the corporation"), a Colorado corporation having its principal place of business in Denver, Colorado, was engaged in the business of producing and marketing plastic forms for poured concrete, used in the construction business. Its president in 1976 was Allen N. Bailey, who was also a member of the board of directors and owned 51% of its stock. The corporation's principal activity was selling the above product; the manufacturing, storing, shipping and billing for the plastic forms was subcontracted by it to another unrelated organization.In 1976, Mr. Bailey, as president of the corporation, spent 99% of his business time in sales efforts for the corporation. At some undisclosed time in 1976, Mr. Bailey conceived the idea of forming *646 a limited partnership for the purpose of acting as the exclusive sales agent for the products of the corporation. He enlisted the assistance of one Jim Williams for the purpose of raising money for the limited partnership through the sale of limited partnership interests. Petitioner was an acquaintance of Mr. Williams, who approached him and persuaded him to invest in the venture as a limited partner. Under date of September 1, 1976, a certificate and agreement of limited partnership was prepared to form a new limited partnership under the provisions of the Uniform Limited Partnership Law of Colorado, Title 7, Article 61, Colorado Revised Statutes (1973). The partnership agreement contained, inter alia, the following provisions which are pertinent and material herein: (a) The name of the partnership was to be Plasti-Form Sales (hereinafter "the partnership"), and its stated purpose was to act as the exclusive sales agent for all sales operations of the corporation. (b) The term of the partnership was stated to commence on September 1, 1976, and was to terminate on September 1, 1983, unless sooner terminated pursuant to the provisions of the partnership agreement. (c) The *647 sole general partner of the partnership was to be Mr. Bailey, and the limited partners were to be such persons who thereafter should execute the agreement of limited partnership and invest therein. (d) The capital of the partnership was to consist of six capital units, at a value of $15,000 per unit. The general partner was to receive one capital unit without cost, and the other five capital units could be purchased by limited partners in any amount. (e) The net income or loss of the partnership was to be allocated among the partners in accordance with their ownership of capital units, except that no net losses were to be allocated to the general partner, but only among the limited partners in proportion to their ownership of capital units. (f) Limited partners were forbidden to take part in the management of the partnership business, and could not transact any business for the partnership nor have the power to bind the partnership in any way. The liability of limited partners for debts and losses of the partnership was in no event to exceed the limited partner's capital account plus his undistributed share of partnership net income or capital gains. (g) The agreement *648 gave to the general partner, Mr. Bailey, sole discretion in the management and control of the partnership's business. As compensation for his services, the general partner, in addition to his share of profits by reason of the ownership of one capital unit, was to receive a salary of $1,000 a month for such time as he was active in the conduct of the partnership's business in the Denver, Colorado area, with periods of less than a month to be prorated. In addition, the general partner was to be reimbursed for all his direct and indirect costs attributable to partnership business activities. On the same day as the date of the limited partnership agreement, September 1, 1976, a further document, entitled "Exclusive Sales Agency Agreement," was executed by Mr. Bailey in his capacity as president of the corporation and also in his purported capacity as general partner of the partnership. As material and pertinent herein, that agreement provided: (a) The corporation appointed the partnership as the exclusive sales agent, worldwide, for all of the corporation's products, in consideration of the payment by the partnership to the corporation of $45,000. (b) Although executed on September 1, 1976, the *649 agreement provided that its terms would be retroactive to January 1, 1976. (c) The partnership agreed to assume all expenses and disbursements incurred in carrying out its duties as exclusive sales agent for the corporation during the period covered by the agreement. (d) As compensation for its services as exclusive sales agent for the corporation, the partnership was to receive 20% of the net profits of the corporation, computed in accordance with generally accepted accounting practices, and prior to the computation of any compensation due the partnership or any Federal, state or local income taxes.
(e) The exclusive sales agency agreement was to continue in effect until terminated by either party, as provided therein. On August 19, 1976, prior to the date of the partnership agreement and the exclusive sales agency agreement, the corporation issued a bill or invoice to the partnership, in the net amount of $36,859.19, with the explanation that the bill was "per sales agreement: reimbursement to us for salaries and travel expense incurred in 1976." The bill provided that it was payable by December 31, 1976. Such amount was paid by the partnership to the corporation in 1976. *650 [3]
In its partnership return of income for 1976, filed on the calendar year and cash basis, the partnership reported a net loss of $41,859.19, composed of the above amount of $36,859.19 (described in the return as "share of expenses") plus $5,000 salary paid to its general partner.The partnership did not report any other expenses, and reported no gross income. The extent to which the partnership carried on business in 1976, if any, is not disclosed in this record. In 1976, the partnership had two limited partners: (a) Betty J. Stark, of Denver, Colorado, who executed the partnership agreement under date of October 11, 1976, agreeing to buy one capital unit for the amount of $15,000; and (b) petitioner, who executed the partnership agreement on December 20, 1976, agreeing to buy two capital units for the total amount of $30,000. Petitioner's capital contribution was paid partly in 1976 and partly in 1977, in undisclosed amounts.
The $45,000 payment called for by the "Exclusive Sales Agency Agreement" between the partnership and the corporation, *651 as the purchase price of the exclusive sales agency, if paid at all, was not paid by the partnership to the corporation in 1976 in any form denominated as such payment. For the year 1976, the partnership allocated to petitioner two-thirds of its claimed net operating loss of $41,859.19, or $27,906.13, and notified him of this allocation by sending him the appropriate Schedule K-1 of Form 1065. [4] Petitioner duly included this amount in his 1976 income tax return, as a loss realized from a partnership, attaching the copy of the Schedule K-1 furnished to him by the partnership. There is no evidence that petitioner was otherwise informed with respect to the activities of the partnership, or the items appearing in its return. Upon examination of the partnership's information return for the year 1976, respondent *652 disallowed the claimed deduction of $36,859.19 for "share of expenses," as claimed by the partnership. Consistent therewith, respondent, upon audit of petitioners' income tax return for 1976, disallowed $24,571.13 of petitioners' claimed partnership loss, being two-thirds (rounded) of the expense deduction which had been allowed to the partnership. Respondent's explanation, contained in his statutory notice of deficiency herein, was: It is determined that Franchise payments to Plasti-Forms, Inc. are not deductible as an operating expense, but are considered payments for a capital asset * * *. No part of petitioners' underpayment of tax for 1976 was due to negligence or intentional disregard of rules and regulations. OPINION Respondent determined that certain deductions claimed by the partnership in its 1976 information return were not allowable as operating expenses, and therefore that petitioner was not allowed to deduct his partnership share of such alleged expenses in his own return. This action by respondent was squarely put in issue by the petition herein, with petitioners contending that the amount claimed by the partnership was fully deductible as an ordinary and necessary *653 business expense, as originally claimed by the partnership. [5]The burden of proof on this issue [6] is upon the petitioners, Welch v. Helvering,290 U.S. 111 (1933), Rule 142(a), not only to show that respondent erred in his determination, but also to prove the amount of the deduction claimed. Burnet v. Houston,283 U.S. 223 (1931); Estate of Peter Finder v. Commissioner,37 T.C. 411 (1961). Upon this record, we must hold that petitioners have failed to carry their necessary burden of proof to establish that the contested amounts were currently deductible for the year 1976 under section 162. [7]
*654 Petitioners' failure of proof on this issue may be grouped in two broad categories: 1. "Ordinary and Necessary" -- Petitioner contends that the amount of $36,859.19, concededly paid by the partnership to the corporation in 1976, was a reimbursement to the corporation for sales expenses incurred by the corporation in that year, and was an expense which the partnership was obligated to shoulder, under the terms and conditions of the exclusive sales agency agreement allegedly entered into between the partnership and the corporation. The expenditures making up this sum, of course, were incurred in the first instance by the corporation. Even putting all other considerations aside, it was incumbent upon petitioners to show that the various expenditures made by the corporation, and for which it was reimbursed by the partnership, were both ordinary and necessary, in terms of both amount and the purpose for which they were spent, so that they would be considered ordinary and necessary selling expenses of the corporation, and, ergo, by the partnership when it took over the liability. Petitioners have failed completely in their burden in this regard. Other than brief generalized testimony *655 by the corporation's president, Mr. Bailey, and the bill rendered by the corporation to the partnership, which describes the amount as "salaries and travel expense incurred in 1976," we are left without information as to the nature of the items, and their individual amounts, which make up the total claimed. The corporation's bill to the partnership, and Mr. Bailey's brief comment that the expenses were sales-related, are conclusory at best, and are certainly not self-proving.It was incumbent upon petitioner to show what the items were that made up the claimed total of expenses, that such items were in fact sales-related and that they were ordinary and necessary within the meaning of section 162. This he completely failed to do. 2. "Trade or Business" -- The alleged "expenses" for which the partnership reimbursed the corporation and which are the basis for the claimed deduction herein were, even if ordinary and necessary, incurred with respect to a period of time prior to the partnership's beginning its existence. The evidence in this case is that the claimed expenses were billed by the corporation to the "partnership" on August 19, 1976, and such bill could therefore not have *656 covered any expenses subsequent to that date. On August 19, 1976, the evidence shows that the limited partnership agreement had not yet been created, nor had the exclusive sales agency agreement been entered into, nor is there any evidence at all that the "partners," even operating informally, had conducted any business activity. It is hornbook law, as well as Colorado law, see section 7-61-102, Colorado Revised Statutes (1973), that it takes at least two people to make a partnership. The Code, section 7701(a)(2), and respondent's regulations are not to the contrary. See section 301.7701-3(a), Proced. & Admin. Regs. Even assuming that Mr. Bailey, as general partner, signed the Plasti-Form Sales Limited Partnership Agreement on September 1, 1976 (his signature does not appear on the copy of the partnership agreement which is in evidence), a partnership could not exist before a second partner joined, and this did not take place until October 11, 1976, when Ms. Stark executed the partnership agreement. Petitioner, in turn, did not join the partnership until December 20, 1976. Even further *657 assuming that the partnership, once in existence, ratified the sales agency contract which Mr. Bailey had executed on September 1, 1976, it is clear that the "expenses" for which the partnership reimbursed the corporation were with respect to a period prior to the partnership coming into existence. It must follow that such expenses, even if otherwise substantiated, would not be deductible by the partnership in 1976, because they were not incurred or paid with respect to any trade or business which the partnership had carried on. Section 162(a); Richmond Television Corp. v. United States,345 F.2d 901 (4th Cir. 1965), remanded on other grounds 382 U.S. 68 (1965); Goodwin v. Commissioner,75 T.C. 424, 433 (1980), affd. without opinion 691 F.2d 490 (3d Cir. 1982); Madison Gas & Electric Co. v. Commissioner,72 T.C. 521, 566 (1979), affd. 633 F.2d 512 (7th Cir. 1980); Bennett Paper Corp. v. Commissioner,     F.2d     (8th Cir. 1983, 83-1 USTC par. 9208). Since the above discussion disposes of the issue which is before us, we need not consider the various alternative *658 theories advanced by respondent to support his view that the expenditures here involved were made for the acquisition of a capital asset. Cf. Haskins v. Commissioner,T.C. Memo. 1982-730. The remaining issue concerns respondent's determination that petitioners are liable for an addition to tax under section 6653(a). As it read in 1976, that section imposed an addition to tax equal to 5% of the underpayment for the year to the extent that any part of such underpayment was due to the taxpayer's "negligence or intentional disregard of rules and regulations (but without intent to defraud) * * *." Here again, the burden of proof is on petitioners, Enoch v. Commissioner,57 T.C. 781 (1972). On this record, we are satisfied that petitioners have met their necessary burden of proof, and that no addition to tax for negligence should be imposed. The principal adjustment to petitioners' 1976 income was the disallowance of petitioners' share of the claimed partnership loss, which we have discussed above. The record shows that petitioner, residing in Ohio, was *659 a limited partner in a partnership located in Denver, Colorado, over 1,000 miles away. As a limited partner, petitioner had no participation, voice or authority of any kind in the management of the partnership affairs, see our findings of fact supra, and section 7-61-108, Colorado Statutes Revised (1973). It is thus clear that petitioner had no authority with respect to keeping the partnership books and records, and making its returns. All such authority and responsibility was vested in Mr. Bailey, the general partner. The partnership, in fact, gave petitioner the required Form K-1, showing him what his distributive share of partnership income and loss was for the year 1976, in accordance with the partnership agreement and return, and petitioner duly included this amount in his 1976 return, as well as attaching the Form K-1 itself to the return, so that respondent would be as fully informed as petitioner was in the premises. It does not appear that petitioner got any other information from the partnership. We think that petitioner's actions were reasonable in the circumstances, and it is clear that he was not the partner with responsibility for keeping the partnership books *660 and records. We accordingly hold that no addition to tax for negligence should be imposed with respect to this item. Compare Foster v. Commissioner,80 T.C. 34 (1983); Marcello v. Commissioner,T.C. Memo. 1964-299, affd. on this issue 380 F.2d 499, 505-507 (5th Cir. 1967); Feller v. Commissioner,T.C. Memo. 1983-119. Respondent's other adjustments to petitioners' income for the year 1976 were not contested by petitioners. Respondent's statutory notice, however, discloses that they were minor in amount, and represented seven small adjustments made by respondent to items which were disclosed in petitioners' return; in one case, the adjustment was in petitioners' favor. This is not the stuff of which negligence is made, for purposes of the addition to tax under section 6653(a). Compare Kilborn v. Commissioner,29 T.C. 102, 111-112 (1957). We accordingly disapprove respondent's proposed additions to tax under section 6653(a). Decision will be entered under Rule 155.
Footnotes
1. All statutory references herein are to the Internal Revenue Code of 1954, as in effect in the year in issue, unless otherwise noted. All references to Rules are to the Rules of Practice and Procedure of the United States Tax Court.↩
2. Petitioner Moana King is involved only because she filed a joint return with her husband Keith King for the year in issue, and will not be referred to further herein.↩
3. Although not fully substantiated by the exhibits in evidence, petitioner's witness Bailey so testified and respondent so conceded.↩
4. Two-thirds of the loss was apparently allocated to petitioner in accordance with the provisions of the partnership agreement that losses should be allocated solely among the limited partners in accordance will their ownership of capital units. At the end of 1976, there were three capital units outstanding in the hands of limited partners, of which petitioner owned two.↩
5. There is apparently no dispute between the parties that the disputed partnership deduction, if properly allowable to the partnership, would also be allowable pro rata to petitioner. See section 704. ↩
6. The issue is respondent's determination that an ordinary loss deduction is not allowable to petitioner for his share of claimed partnership expenses "[T]he presumption of correctness of the respondent's determination is not destroyed by the reason given, even if it be unsound or badly expressed." Estate of Peter Finder v. Commissioner,37 T.C. 411, 423↩ (1961). 7. Section 162 provides in relevant part as follows: (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including -- (1) a reasonable allowance for salaries or other compensation for personal services actually rendered; (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagent under the circumstances) while away from home in the pursuit of a trade or business; and (3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.↩