BURNET OUTTEN JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Outten v. Commissioner
Docket No. 12447-81.
United States Tax Court
T.C. Memo 1984-81; 1984 Tax Ct. Memo LEXIS 592; 47 T.C.M. (CCH) 1120; T.C.M. (RIA) 84081; February 21, 1984. Burnet Outten, Jr., pro se. Warren P. Simonsen, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined the following deficiencies in petitioner's Federal income tax: Additions to tax
Year
Deficiency
Sec. 6651(a) [1]
Sec. 6653(a)
1972
$76.00
$19.00
$3.80
1976
421.42
105.36
21.07
1977
327.00
81.75
16.35
1978
413.00
103.25
20.65
1979
255.00
63.75
12.75
Petitioner has conceded that he received income in the amounts determined by respondent. [2] We must determine whether petitioner is entitled to deduct certain claimed business expenses, whether petitioner's failure to file income tax returns during the years in issue was due to reasonable cause, and whether petitioner is liable for additions to tax for negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). *594 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner resided in Florida when he filed his petition herein. No individual Federal income tax return was filed by petitioner for any year between 1972 and 1979, inclusive. Partnership income tax returns were filed by Western Metal Products Company (Western Metal) for 1977 through 1979. Western Metal was established in 1941. Petitioner has had a continuing interest in Western Metal since its founding. [3]
During the 1940's and from 1954 to 1956, Western Metal apparently conducted manufacturing operations. At all other times, and perhaps even during the time Western Metal was involved in manufacturing, Western Metal conducted atomic energy research. There is no indication in the record that anyone other than petitioner conducted any of this research for Western Metal. Since petitioner was the sole participant in Western Metal's nuclear research activities, we shall sometimes refer to Western Metal's actions as petitioner's. *595 In 1951, according to petitioner, Western Metal conducted an experiment which resulted in nuclear fusion. However, petitioner did not "discover" that nuclear fusion had occurred until 10 years later, when he was doing further research. This experiment was repeated by Western Metal, according to petitioner, in 1971. [4] Petitioner believes that the world was initially created by this nuclear fusion process. Over the years, petitioner has made numerous attempts to inform scientists and government officials of Western Metal's miraculous "discovery," which he asserted has never been duplicated by anyone else. Some of petitioner's correspondents have expressed polite interest in petitioner's project; others have evaluated petitioner's claims and found them of "no merit." Neither petitioner nor Western Metal has ever received any income, let alone a profit, from this nuclear fusion process. In 1978, Western Metal established a book value for its process of $50,000,000. On the 1977 through 1979 partnership tax returns, petitioner listed net operating losses of $100,000, $10,000,000, *596 and $5,000,000, respectively. These losses were described as due to "write-off of capitalized research work." Petitioner apparently concluded that this write-off was justified because government officials were ignoring him and his "discovery." [5]
Petitioner submitted lists of expenditures which respondent concedes were made by petitioner for the purposes indicated, but not that *597 they were expended for business purposes. The amounts spent during the years in issue are as follows: 1972 -- $1,273.08 plus $519 (office in home); 1976 -- $1,324.40 plus $906 (office in home); 1977 -- $794.31 plus $911 (office in home) plus $272.33 (moving expense); 1978 -- $900.42 plus $720 (office in home); 1979 -- $1,039.19 plus $720 (office in home). [6]
OPINION Petitioner is faced with a multitude of obstacles to overcome before we can find the expenses at issue herein deductible. Although there are numerous grounds upon which most or all of these expenses can be denied, we will discuss only one such ground. The deductibility of these expenses under section 162 (trade or business expenses), section 165 (losses incurred in a trade or business or in a transaction entered into for profit), or section 212(1) and (2) (expenses incurred in the production of income) turns on whether Western Metal's research activity was carried on with a bona fide profit objective. [7]Dreicer v. Commissioner,78 T.C. 642 (1982), *598 affd. in an unpublished opinion (D.C. Cir., Feb. 22, 1983); Bessenyey v. Commissioner,45 T.C. 261, 273-274 (1965), affd. 379 F.2d 252 (2d Cir. 1967). A taxpayer's declaration of a profit motive is not controlling; profit objective must be determined by a careful analysis of all the facts and circumstances, and those facts and circumstances are entitled to greater weight than a taxpayer's mere statement of intent. Dreicer v. Commissioner,supra at 645. The burden of proof on this issue rests with petitioner. Rule 142(a). The regulations under section 183 list the following nine relevant factors *599 which should normally be taken into account in determining whether an activity is engaged in for profit: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) expectation that assets used in activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; (9) elements of personal pleasure or recreation. Section 1.183-2(b), Income Tax Regs. Without specifically addressing each factor in the regulations, the following summary of the facts reveals that petitioner has not carried his burden of proving a profit objective. Although petitioner allegedly first produced nuclear fusion in 1951, he did not become "aware" of his "discovery" for ten years. Petitioner has neither described nor proved the manner in which he carries on his research, his expertise, or the amount of time and effort expended by him in carrying *600 on the activity. Petitioner merely contends that he has performed this experiment twice, that he studies nuclear research a great deal, and that he has made numerous efforts to convince others, including high-ranking government officials and prominent scientists, of the success of his experiment, although no one has shown any great interest. Western Metal's "process" by which nuclear fusion allegedly occurs has never been patented. Petitioner has never, so far as we know, made a nickel as an inventor; Western Metal has never earned any income from petitioner's "discovery." Petitioner has been supported by his parents and by trusts established by them; the income received from these sources, in conjunction with whatever other assets petitioner owns, has apparently been sufficient to sustain petitioner without forcing him to seek gainful employment. Finally, petitioner seems to find religious significance in his discovery, i.e., that nuclear fusion somehow pertains to the creation of the universe. [8]
*601 On this record, we cannot accept petitioner's contention that he or Western Metal had a bona fide profit objective during the period 1972 through 1979. By the beginning of that period, it was clear that the scientific community was not interested in the "discovery," even though enormous sums were being spent annually by public and private concerns on nuclear research. Surely, by that time, the "discovery" would have generated at least some, if not substantial, income if it had been of any monetary value whatsoever. Petitioner's contention that research firms invest lots of time and money in projects that do not generate income simply misses the point. Western Metal's sole activity was promoting a "discovery" that time had shown would never be profitable. In light of the scientific community's lack of interest, it must have been clear to petitioner, at least by the years in issue, that the "discovery" would never generate any income, let alone a profit, for him or Western Metal. Consequently, the expenses incurred by petitioner or Western Metal during the years in issue were not incurred by a taxpayer operating with a profit objective.Cf. White v. Commissioner,23 T.C. 90 (1954), *602 affd. per curiam 227 F.2d 779 (6th Cir. 1955). Compare Avery v. Commissioner,47 B.T.A. 538 (1942); section 1.183-2(c), Example 6, Income Tax Regs. They are therefore not deductible under section 162 or section 165 or section 212(1) and (2).Such being the case, since the activities of petitioner and Western Metal generated no income during the years in issue, none of the expenses incurred by him and/or Western Metal are deductible under section 183(b). Petitioner also has the burden of proving that his failure to file income tax returns during the years in issue was due to reasonable cause (section 6651(a)) and that he did not negligently or intentionally disregard rules and regulations within the meaning of section 6653(a). Rule 142(a). As petitioner has not addressed either of these two issues, he has failed to carry his burden of proof relating thereto and respondent's determination with respect to the additions to tax is sustained. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all references to Rules are to the Tax Court Rules of Practice and Procedure. ↩
2. Petitioner received the following income during the years in issue: 1972 - $2,597.75 in dividend and trust income; 1976 - $4,690.69 in interest, dividend, and trust income; 1977 - $4,609.60 in interest, dividend, and trust income; 1978 - $5,063.90 in interest, dividend, and trust income; 1979 - $4,442.06 in interest, dividend, and trust income.↩
3. Petitioner claimed, on the 1979 partnership tax return, that Western Metal had had the following owners since 1951: 1952-1968
sole proprietorship (petitioner)
1969-1974
partnership (petitioner, 50 percent; John A.
Outten (son), 50 percent)
1975-1976
sole proprietorship (petitioner)
1977
partnership (petitioner, 50 percent; Janet A.
Outten (daughter), 50 percent)
1978
partnership (petitioner, 90 percent; Janet A.
Outten (daughter), 10 percent)
1979
partnership (petitioner, 50 percent; Janet A.
Outten (daughter), 10 percent; four other
children, 10 percent each)
Consequently, of the years in issue, Western Metal was, according to petitioner, a partnership in 1972, 1977, 1978, and 1979 and a sole proprietorship in 1976. No partnership document or other supporting material other than the three partnership returns has been submitted into evidence. Consequently, it is unclear whether there was in fact a partnership. However, for the reasons below (see pp. 5-6, infra,↩ and n. 7), we need not determine whether or not a partnership existed.
4. Neither petitioner nor Western Metal has a patent or has applied for a patent on this process.↩
5. On the 1977 partnership return, petitioner stated his basis in his partnership interest as follows: * Partner's contributed property (other than money) has been in the form of intellectual property which has been the result of 35 years of complex research work and for which a monetary basis has not yet been established. There has also been some contribution of used machinery -- such as old welding generators and other items used in the partnership's experimental research program. No more extensive statement of petitioner's basis in his partnership interest has ever been presented to the Court. To the extent that personal services entered into the calculation, they may not be taken into account in determining basis. Cf. Hutcheson v. Commissioner,17 T.C. 14, 19↩ (1951).
6. Petitioner also submitted lists of expenditures for 1973, 1974, and 1975. These expenses totalled $6,670.43, of which at least $1,684 was attributable to home office expenses.↩
7. Because a bona fide profit objective is a critical finding for both partnerships and sole proprietorships, there is no reason for us to determine in which form Western Metal was conducted. The same criteria apply in determining whether petitioner was a sole proprietor in 1976 or a partner in 1972, 1977, 1978, or 1979; in the latter instance, the determination is made at the partnership level. Madison Gas & Electric Co. v. Commissioner,72 T.C. 521, 564-565 (1979), affd. 633 F.2d 512↩ (7th Cir. 1980).
8. Petitioner's briefs seize upon this alleged religious significance and contain extensive argument about scientific experimentation and religious freedom in the context of the relationship between church and state (which we find to be totally irrelevant to this case), during the course of which petitioner explores history from Thomas Jefferson to Ronald Reagan and from the Bible to reports by the Atomic Energy Commission.↩