T.C. Memo. 1996-363

UNITED STATES TAX COURT

GEORGE KUKES AND MARGARET KUKES, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19832-94.                    Filed August 8, 1996.

George Kukes, pro se.[1]

<u>Michelle D. Korbas</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARR, <u>Judge</u>:  Respondent determined deficiencies in, an
addition to, and penalties on income taxes of petitioners as
follows:

---

[1]  Margaret Kukes did not appear for trial.

|  |  | Addition to Tax and Penalties | |
| Year | Deficiency | Sec. 6651 | Sec. 6662(a) |
| 1991 | $4,566 | -0- | $913 |
| 1992 | 11,268 | $330 | 2,254 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are:

(1) Whether petitioners are entitled to deduct a net operating loss (NOL) consisting of estimated potential wages lost when George Kukes (petitioner) was terminated by his employer in 1984. We hold they are not.

(2) Whether petitioner was in a trade or business concerning his music activities in 1992. We hold he was not.

(3) Whether petitioners are subject to an addition to tax for delinquent filing of their 1992 income tax return. We hold that they are.

(4) Whether petitioners are subject to a negligence penalty for 1991 and 1992. We hold they are.
Petitioners have conceded the remaining issues raised in the notice of deficiency.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. When they filed their petition in this case, petitioners resided in Roseville, California.

Net Operating Loss

Petitioner filed a wrongful termination suit against a former employer in 1984, claiming lost wages and benefits of $209,367 based upon his attorney's calculations. The lawsuit was settled for $27,500, which petitioners correctly reported as taxable income in the year received. In 1987, petitioners began deducting, as an NOL, the difference between $209,367 and $27,500. Petitioners have never included in taxable income, nor been subject to tax on, the amounts which they are deducting as an NOL ($29,506 in 1991 and $26,880 in 1992).

Trade or Business

During the late 1970's, petitioner formed the Presto Co., a sole proprietorship which involved various musical activities. Petitioners reported gross receipts on their Schedules C for tax years through 1985 consisting of income from teaching piano lessons, piano sales, and piano tuning and repair. In 1985, petitioners' Schedule C showed gross receipts of $448 from piano lessons; petitioner ceased teaching piano lessons in that year.

Petitioners reported no gross receipts from music activities on their Schedules C for 1986, 1987, 1988, 1989, 1990, and 1992 tax years. (Gross receipts shown on petitioners' Schedule C for 1991 in the amount of $650 consisted of income from consulting

work related to a safety program, unrelated to the music business.[2])

At some indeterminate point petitioner conceived of a unique keyboard instruction system, which he called "Presto". Presto is a system of teaching keyboard techniques revolving around flexible lesson plans. Petitioner thought that his system could be marketed in the form of a video, software, written material, or another interactive form. He hoped it could be sold to school systems. However, petitioner did not actually produce any marketable video, software, or written material but instead continued to consider and investigate various possibilities.

Petitioners have never received any gross income from the sale of any product associated with Presto. Petitioners reported losses on their Schedule C related to Presto for at least 8 consecutive years (1985 through 1992), claiming expenses during those years of more than $65,000. During 1992 and up to and including the time of trial, petitioner was still in the process of developing Presto. In 1992, petitioners maintained no separate bank account, had no customers, and kept no books for the Presto activity. Petitioners stipulated: "During the 1992 tax year there was no need for petitioners to maintain a separate bank account for the Presto activity because it was not an income

---

[2] Respondent made no adjustments in the notice of deficiency regarding petitioners' Schedule C for 1991. We therefore make no findings concerning it.

generating business." They also stipulated that "During the 1992 tax year, Presto was not an operational 'going-concern'".

In 1992, petitioner's Form W-2 wages were $45,128 from full-time employment as an engineer.

The most significant expense claimed on petitioners' 1992 Schedule C is for depreciation of petitioners' entire residence in Santa Maria, California, in the amount of $17,226.30. In December of 1991, petitioners moved from Santa Maria to Merced, California, where they rented an apartment closer to petitioner's place of employment. During 1992, petitioners were attempting to sell their Santa Maria residence. Mrs. Kukes periodically stayed in Santa Maria to maintain the yard and residence. Most of petitioners' furniture and personal belongings remained at the Santa Maria property, including petitioner's piano, organ, computer, and Presto work product. The cost of the Santa Maria home in 1984 was approximately $161,000. Petitioners treated the Santa Maria residence as their principal residence for purposes of rolling over the gain on the sale of the home in 1994.

In addition to depreciation, on their 1992 Schedule C petitioners deducted $238.90 for home insurance, $6,122.05 for mortgage interest, $1,780.54 for property taxes, and $965.41 for utilities related to their Santa Maria residence.

Addition to Tax and Penalties

Petitioners concede they filed their 1992 income tax return late. The stipulated copy of the return shows it was received by

the Internal Revenue Service Center in Fresno, California, on April 27, 1993.

From 1987 through 1992, petitioners prepared their own tax returns. When they began using a paid preparer in 1993, they discontinued deducting the NOL. They also discontinued filing a Schedule C with their 1993 income tax return. Although petitioner called the Internal Revenue Service (IRS) to ask about the mechanics of calculating the NOL, he did not tell anyone at the IRS that the NOL he was planning to deduct involved lost anticipatory wages.

OPINION

Determinations made by the Commissioner in the notice of deficiency are generally presumed correct; the burden of proof is on the taxpayers to show those determinations are wrong. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).

Net Operating Loss

Deductions are a matter of legislative grace. New Colonial Ice Co. v. Helvering, 290 U.S. 435, 440 (1934). It is well established in case law that no deduction is allowed under section 165 or any other Code section for loss of potential income. See, e.g., Hort v. Commissioner, 313 U.S. 28, 33 (1941) (since unrealized rent is not includable in taxpayer's gross income, taxpayer has no grounds for deduction); Stephens v. Commissioner, T.C. Memo. 1980-131 (no deduction allowed for wages that could have been earned had an individual's employment not

been terminated); <u>Johnson v. Commissioner</u>, T.C. Memo. 1978-395 (no deduction allowed for mere expectation).

Thus, petitioner is not entitled to deduct the anticipated wages lost because of his termination.

<u>Trade or Business</u>

Section 162 provides that "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  Respondent contends that petitioner was not in a trade or business with regard to Presto, because (1) he did not have an "actual and honest objective of making a profit";[3] or (2) even if petitioner had the requisite profit objective, he was not engaged in an active trade or business in 1992, but was only, at most, in the startup phase of a trade or business.  Respondent further contends that, even if petitioner was in an active trade or business, section 280A limits depreciation of a dwelling unit used by the taxpayer during the year as a residence to the gross income derived from such use for the tax year, less certain allocable deductions.  Thus, since petitioners have no gross income, they are allowed no deduction for depreciation.

Section 195(a) provides, in relevant part, that "Except as otherwise provided in this section, no deduction shall be allowed for start-up expenditures."  It is clear from the record that in

---

[3]  See <u>Dreicer v. Commissioner</u>, 78 T.C. 642 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983).

1992 (and up until the time of trial), petitioner had not yet developed a product for sale, had not advertised such a product, had no bank account books or records, and had never received any income from Presto, and that Presto has never been a going concern. Petitioner simply had a concept that had not yet taken a concrete, marketable form. We therefore need not delve into petitioner's state of mind regarding profit objective, because it is clear that, at most, petitioner was merely in the startup phase of a potential business.[4]

Courts have consistently denied deductions for startup or preopening expenses incurred by taxpayers prior to beginning business operations. Courts have articulated two rationales for concluding that such expenses are not deductible under section 162(a): (1) That the taxpayer was not "carrying on" a trade or business, Kantor v. Commissioner, 998 F.2d 1514, 1518 (9th Cir. 1993), affg. in part and revg. in part T.C. Memo. 1990-380; Aboussie v. United States, 779 F.2d 424, 428 (8th Cir. 1985); Richmond Television Corp. v. United States, 345 F.2d 901, 907 (4th Cir. 1965), vacated and remanded per curiam on other grounds 382 U.S. 68 (1965), or (2) that preopening expenses were not "ordinary" but capital in nature, Madison Gas & Elec. Co. v. Commissioner, 633 F.2d 512, 517 (7th Cir. 1980), affg. 72 T.C. 521 (1979); Hardy v. Commissioner, 93 T.C. 684 (1989). However,

---

[4] If, however, we were to consider respondent's other arguments, we would find them well taken.

because petitioner's own statements with regard to his activities make it clear that his expenditures were incurred in organizing, developing, or starting up a business, we need not choose one rationale over the other.[5]  Petitioner's expenditures would be nondeductible under either analysis.[6]

We therefore agree with respondent that the loss shown on petitioners' Schedule C for 1992 must be disallowed.[7]

Addition to Tax and Penalties

Section 6651 provides that in case of failure to file a timely return (including extensions), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month.  Petitioners did not request an extension.  Their 1992 income tax return was due April 15, 1993, but was filed on April 27, 1993.  Thus, petitioners are

---

[5]  Petitioner has characterized his Presto activities as "research and development", apparently in an attempt to bring them under sec. 174.  Even if we were to find that his activities came within that rubric (which we do not), petitioner is not helped.  He has not demonstrated a "realistic prospect" of subsequently entering a business in connection with the fruits of the research; i.e., by manifesting both the objective intent to enter such a business and the capability of doing so.  Kantor v. Commissioner, 998 F.2d 1514, 1518 (9th Cir. 1993), affg. in part and revg. in part T.C. Memo. 1990-380.

[6]  See also Pino v. Commissioner, T.C. Memo. 1987-28.

[7]  Respondent allowed the mortgage interest and real estate taxes on petitioners' residence, plus State taxes and contributions, as Schedule A deductions in the notice of deficiency.

liable for the addition, unless they can show that the delay was due to reasonable cause.  Petitioners' only explanation is that they expected to receive a refund, and thus thought there would be no penalty.  The expectation of receiving a refund is not reasonable cause to fail to do what the law requires, and the law does not provide for any such exception.  Petitioners are liable for the addition to tax under section 6651.

Respondent also determined a penalty for negligence for each of the years in issue.  Section 6662 applies a penalty of 20 percent of the portion of any underpayment which is attributable to negligence or disregard of rules or regulations.  Sec. 6662(b)(1).  The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the income tax laws, and the term "disregard" includes any careless, reckless, or intentional disregard.  Petitioner did not seek advice from either the respondent or any tax professional about the propriety of deducting his lost anticipatory wages as an NOL, an issue that is well settled.  Neither did he seek advice about treating his personal residence as a Schedule C expense for a business that was, at most, in the startup phase.  We believe a reasonable person would have sought advice before taking the positions taken by petitioners on their return.  Petitioners have the burden of proof on this issue.  Inasmuch as petitioners conceded the remaining adjustments raised in the notice of

deficiency, we find that they were negligent as to the entire amount of the underpayment.

In light of the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.