HENRY PINO AND LYDA PINO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pino v. Commissioner
Docket No. 22190-83.
United States Tax Court
T.C. Memo 1987-28; 1987 Tax Ct. Memo LEXIS 28; 52 T.C.M. (CCH) 1388; T.C.M. (RIA) 87028; January 13, 1987. *28 Petitioner was employed in 1981 as a canal pilot for the Panama Canal Commission. In his free time, petitioner attempted unsuccessfully to organize an import-export business between the United States and South America. Held: The Panama Canal Treaty and its implementing agreement, T.I.A.S. 10030 and 10031, do not exempt petitioner from United States taxation on the wages he received from the Panama Canal Commission from Feb. 16, 1981 through Dec. 31, 1981. Held further: Petitioner is not entitled to a deduction for the cost of meals and rent for the 90-day period following his relocation from Miami to Panama because he did not occupy "temporary quarters" within the meaning of sec. 217(b)(1)(D), I.R.C. 1954. Held further: Petitioner is not entitled to a business deduction under sec. 162, I.R.C. 1954, for what amounted to pre-opening expenditures; petitioner is not entitled to an amortization deduction for 1981 for such expenditures under sec. 195, I.R.C. 1954, because he never commenced an active trade or business. Andrew C. Barnard, for the petitioners. Sergio Garcia-Pages, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined *29 a deficiency in the amount of $13,662 in petitioners' Federal income tax for 1981. After concessions, the issues for decision are: 1. Whether income earned in 1981 by petitioner Henry Pino as a canal pilot for the Panama Canal Commission is exempt from taxation by the United States. 2. Whether petitioners are entitled to a deduction under section 217(h)[1] for temporary living expenses in Panama. 3. Whether petitioners are entitled to a deduction under section 162(a) for expenses incurred in an import-export activity. [2]
FINDINGS OF FACT Petitioners Henry and Lyda Pino were legal residents of Balboa, Republic of Panama (hereinafter Panama) when their petition was filed. Petitioners filed a joint Federal income tax return for 1981 with the Internal Revenue Service Center, Atlanta, Georgia. Petitioner Henry Pino (hereinafter petitioner) moved to Panama on February 16, 1981, and was joined by his son on or about March 16, 1981, and his wife on March 30, 1981. *30 Petitioner was employed as a canal pilot for the Panama Canal Commission (Commission) in Panama from February 16, 1981 through December 31, 1981, and continued in that capacity up to the time of trial. In 1981, petitioner earned wages from his job with the Commission in the amount of $51,095. When petitioner and his family first moved to Panama from their home in Miami, Florida, they were assigned to living quarters which they rented from the Commission. The quarters assigned to petitioner were made available to him on an indefinite basis, although petitioner was free to look for alternative housing. During the first 90 days petitioner and his family occupied the assigned living quarters, petitioner paid $559.20 in rent to the Commission. Petitioners and their son occupied the rented living quarters from February and March 1981 until the time of trial. As a canal pilot, petitioner works on a rotation schedule, working 3 or 4 days per week for 6 weeks, and resting for the next 4 weeks. During his "time off" in 1981, petitioner attempted to start an import-export business (import-export activity) with the assistance of Ellis Gomez (Gomez), a business and public relations consultant *31 with whom petitioner had had past dealings. In connection with the import-export activity, petitioner paid Gomez $5,518 for professional public relations services rendered during the third quarter of 1981, including: consulting fees; travel reimbursement; advertising; and clerical assistance and use of the telephone in Gomez' office in Coral Gables, Florida. Pursuant to his attempts to organize the import-export activity, petitioner traveled to Miami on several occasions, as well as to Peru and Guatemala. Petitioner attempted unsuccessfully to arrange to supply a Peruvian canning company with approximately 40,000 tons of tin from foreign suppliers. Petitioner also explored the possibilities of purchasing buses from the United States to sell to the Peruvian government and of importing shrimp and plantains from Haiti and melon dews from Guatemala. However, petitioner's efforts never materialized into a business and he never made any purchases or sales. Petitioners filed a joint Federal income tax return for 1981 reporting no taxable income and claiming that the income in the amount of $51,095 earned from employment with the Commission was exempt from taxation. In May 1983 petitioners *32 filed a second income tax return for 1981 (1981 tax return) reporting $51,095 in wages and claiming various adjustments to income, itemized deductions, and Schedule C expenses. The items on petitioners' 1981 tax return remaining in dispute are a claimed adjustment for temporary living expenses and a claimed Schedule C business loss of $9,773. Schedule C of the 1981 tax return states the business activity as wholesale steel and agricultural products. No income was reported, but the following expenses were claimed on the Schedule C: Item
Amount
Advertising and postal
$ 30
Car expenses
411
Insurance
269
Legal and professional
1,544
Taxes and license
110
Travel and entertainment
4,991
Utilities and telephone
1,544
Loan application
219
Merchandise samples
655
Total
$9,773
Petitioners stated on the Schedule C that the "EXPENSES WERE INCURRED IN THE ORGANIZATION OF EXPORT/IMPORT BUSINESS FROM MIAMI TO SOUTH AMERICA." OPINION As a preliminary matter, the parties argue on brief a procedural issue which we shall briefly discuss before turning to the substantive issues in the case. Petitioners allege in their petition that at the time of filing the petition, they were residents of Balboa, Republic of Panama. Respondent *33 admitted that allegation in his answer. Petitioners again alleged Panamanian residence in their reply to respondent's answer. At trial, petitioners offered evidence designed to show that, notwithstanding their previously admitted allegation, petitioners were legal residents of Miami, Florida, when their petition was filed. Respondent objected to the admission of any evidence on the issue of petitioners' residency. The issue controls venue for appeal under section 7482(b). [3] *34 The Court permitted petitioners to offer evidence on their legal residence with the understanding that they would amend their pleadings to conform to the proof as required under Rule 41(b)(2), Tax Court Rules of Practice and Procedure. Petitioners have failed to so amend their pleadings. We therefore accept petitioners' original pleadings as admissions that at the time they filed their petition, petitioners were residents of Panama. Moreover, given the admitted allegations in the petition and petitioner's indefinite employment and continued presence in Panama for all except occasional visits to the United States since February 1981, we do not find any evidence to the contrary sufficient to show that petitioners resided in Miami when the petition was filed. 1. Tax Exemption Issue
Petitioner argues that his income received from the Commission for his work as a canal pilot from February 16, 1981 to December 31, 1981, is exempt from taxation by the United States under the terms of article III of the Panama Canal Treaty, T.I.A.S. No. 10030, and the *35 Agreement in Implementation of Article III, T.I.A.S. No. 10031. Article III of the Panama Canal Treaty, entitled "Canal Operation and Management," provides in section 9 that -- the rights and legal status of the United States Government agencies and employees operating in the Republic of Panama pursuant to this Article, shall be governed by the Agreement in Implementation of this Article * * *. Article XV of the Agreement in Implementation provides: 1. By virtue of this Agreement, the Commission, its contractors and subcontractors, are exempt from payment in the Republic of Panama of all taxes, fees or other charges on their activities or property. 2. United States citizen employees and dependents shall be exempt from any taxes, fees, or other charges on income received as a result of their work for the Commission. Similarly, they shall be exempt from payment of taxes, fees or other charges in income derived from sources outside the Republic of Panama. 3. United States citizen employees and dependents shall be exempt from taxes, fees or other charges on gifts or inheritance or on personal property, the presence of which within the territory of the Republic of Panama is due solely *36 to the stay therein of such persons on account of their or their sponsor's work with the Commission. * * * Petitioner contends that the words "exempt from any taxes" in section 2 constitutes an express exemption of his Commission income from both Panamanian and United States income taxation. See sec. 894(a). [4] Following conflicting decisions by the courts of appeal on this issue, [5] the Supreme Court held after the instant case was briefed that article XV, section 2 of the Agreement of Implementation applies only to Panamanian taxes, and thus Commission employees are not exempt from income taxation by the United States. O'Connor v. United States,    U.S.    (1986). We therefore find that petitioner's wages earned in 1981 as an employee of the Commission constitute taxable income to him in that year. 2. Temporary *37 Living Expenses
In February 1981 petitioner moved from Miami, Florida, to Balboa, Panama, to begin employment with the Commission. The Commission provided petitioner, and his family who joined him in Panama in March, with living quarters for which petitioner paid rent to the Commission. During the first 90 days petitioner occupied the assigned living quarters, he paid $559.20 in rent to the Commission. Petitioner claimed a deduction for temporary living expenses on his 1981 tax return. [6] Respondent argues that petitioner is not entitled to a deduction for any living expenses he incurred because his living quarters were not "temporary" within the meaning of section 217 and the regulations thereunder. We agree. Section 217 allows a deduction for moving expenses which *38 include reasonable expenses of "meals and lodging while occupying temporary quarters in the general location of the new principal place of work during any period of 30 consecutive days after obtaining employment." Sec. 217(a), (b)(1)(D). In the case of a "foreign move," defined in section 217(h)(3) as "commencement of work by the taxpayer at a new principal place of work located outside the United States," the limitation in section 217(b)(1)(D) of 30 consecutive days for living expenses is increased to 90 consecutive days. Sec. 217(h)(1)(A). Neither the statute nor the regulations define "temporary quarters." However, the Report of the House Committee on Ways and Means explaining moving expenses deductible under section 217(b)(1)(D) states that (H. Rept. No. 91-413 (Part I), 76 (1969); H. Rept. No. 91-413 (Part II), 50 (1969)): These expenses include costs of meals and lodging for the taxpayer and members of his household at the new job location while they are waiting to move into permanent quarters. * * * * * * Such expenses may occur while the taxpayer is looking for a permanent residence or while he is waiting to move into a new residence which he has found. Petitioner's rent *39 payments to the Commission for the first 90 days that he lived in the living quarters assigned to him are clearly not the type of temporary living expenses Congress intended as deductible under section 217. Petitioner moved into the assigned living quarters immediately upon arriving in Panama and, although his employer would have permitted him to find alternative housing, petitioner remained in the assigned quarters up to the time of trial. Petitioner was not "waiting to move into permanent quarters" or a "new residence he * * * [had] found." Rather, the residence he has occupied since 1981 is his "permanent quarters." Petitioner contends that "the quarters which were assigned to them are temporary as a matter of law governed by the [Panama Canal] Treaty, regardless of their length of stay therein." Petitioner argues that under the Panama Canal Treaty, the Commission and 60 percent of the housing areas will be in Panamanian hands by the year 2000; and therefore his employment and quarters are by their nature temporary. We find this argument to be totally without merit. Twenty years is not temporary under section 217. Petitioner has failed to provide the Court with any evidence of *40 a temporary nature of his employment or his living quarters in Panama. We do not find petitioner's testimony that he and his wife did not like the assigned quarters and that they looked for better housing but could not find a home "feasible" for them sufficient to support petitioner's contention that the living quarters were temporary within the meaning of section 217. [7]
3. Schedule C Business Expenses
In 1981 petitioner attempted to start an import-export business. Pursuant to this endeavor, petitioner incurred various expenses, including traveling expenses and consulting fees, which *41 he claimed as deductions on Schedule C of his 1981 tax return. Petitioner labeled the expenses on his return as "incurred in the organization of export/import business from Miami to South America." Petitioner testified at trial that he was "looking to import things into the United States and to export things out of the United States and in between countries." Petitioner's public relations consultant testified that he was engaged to assist petitioner in "trying to develop" an import-export business. On the basis of this record, we conclude that the expenses incurred by petitioner in 1981 must be characterized as "start-up" or "pre-opening" expenses for which no deduction is allowed in that year. The business did not begin to function as a going concern in 1981 and efforts to develop a business continued beyond the end of that year. See Aboussie v. United States,779 F.2d 424, 428 (8th Cir. 1985); Richmond Television Corp. v. United States,345 F.2d 901, 907 (4th Cir. 1965), vacated per curiam on other grounds 382 U.S. 68 (1965). [8] *43 As explained by the court in Central Texas Sav. & Loan Ass'n v. United States,731 F.2d 1181, 1183 (5th Cir. 1984): "Carrying on any trade or business" *42 has been interpreted to mean that only an existing business, i.e., one that is fully operational, may take advantage of the provision. * * * Hence, if a taxpayer were to start up a new business, the pre-operational or start-up expenses would not be deductible under section 162(a). * * * We add that the evidence offered by petitioner purporting to substantiate his claimed business deductions does not in fact do so. The record contains no substantiation of any travel and entertainment expenses as required under section 274. Furthermore, several of the canceled checks offered as evidence of paid expenses were admittedly written by petitioner for personal expenses on behalf of a corporation, Genesis International Corporation, with which petitioner disavowed any connection. Petitioner contends, in the alternative, that if we find that his expenses were start-up or pre-opening expenses, he is entitled to amortize those expenditures under section 195. [9] *45 Section 195 permits a taxpayer to elect to amortize certain "start-up" expenditures over a period of not less than 60 months commencing with the month in which business begins. The legislative *44 history of section 195 provides that -- Expenditures must relate to the investigation or creation of an active trade or business (within the meaning of Code sec. 162). * * * Therefore, no deduction is allowed under the provision with respect to items incurred incident to a trade or business which actually is not commenced or acquired by the taxpayer. H. Rept. No. 96-1278 (1980), 1980-2 C.B. 709, 713-714. Any expenditures incurred by petitioner during 1981 in an effort to organize an import-export business would be ineligible for amortization under section 195 because petitioner was never engaged in an active trade or business. By his own admission, petitioner's efforts never materialized into a business and he never made any purchases or sales before he "ran out of money." Petitioner's attempts to organize a business went no further than his giving a "sample of ginger" to some growers in Florida in January 1982. Because petitioner never commenced or acquired an active trade or business, he is not entitled to amortize his expenses under section 195. Petitioner also failed to elect to amortize start-up expenditures as is required under sec. 195(c)(1), see H. Rept. No. 96-1278 (1980), 1980-2 C.B. 709, 714, and for this reason, also, fails to qualify for an amortization deduction for 1981. [10]
To reflect the foregoing, Decision will be entered under *46 Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted. ↩
2. Petitioner contends that he is entitled to deductions from income only if we find that his income is not exempt from taxation.↩
3. Petitioners' attempt to prove that their legal residence when they filed their petition was Miami, Florida, rather than the Republic of Panama was an apparent attempt to bring any future appeal by petitioners within the jurisdiction of the Court of Appeals for the 11th Circuit. At the time of trial, that court was hearing an appeal from the Southern District of Georgia, which had ruled as a matter of law that employees of the Panama Canal Commission were exempt from both Panamanian and United States income taxes. The 11th Circuit later affirmed the district court. Harris v. United States,585 F.Supp. 862 (S.D. Ga. 1984), affd. 768 F.2d 1240 (11th Cir. 1985), vacated and remanded    U.S.    (1986). Disposition of this case was suspended pending resolution of the treaty issue by the Supreme Court in O'Connor v. United States,↩    U.S.    (1986).
4. SEC. 894. INCOME AFFECTED BY TREATY. (a) Income Exempt Under Treaty. -- Income of any kind, to the extent required by any treaty obligation of the United States, shall not be included in gross income and shall be exempt from taxation under this subtitle.↩
5. See Coplin v. United States,761 F.2d 688 (Fed. Cir. 1985); Harris v. United States,768 F.2d 1240↩ (11th Cir. 1985).
6. Petitioner claimed a deduction in the amount of $520 on his 1981 tax return for "temporary living expenses" during a period of 90 consecutive days. Petitioner did not indicate on the return whether that amount represented the cost of meals and rent or rent alone. The parties have stipulated, however, and we have found as a fact, that petitioner paid $559.20 to the Commission for rent during the same 90-day period.↩
7. Petitioner requested a finding that he had incurred the following temporary living expenses during the first 90 consecutive days petitioner was employed by the Commission in 1981: Rent
$ 559.20
Car rental for 1 day
34.45
Meals at $15 a day for 90 days
1,350.00
$1,943.65
Respondent did not object to this finding. However, sec. 217(b)(1)(D) does not allow a deduction for transportation expenses, such as car rental, sec. 1.217-2(b)(6), Income Tax Regs. Furthermore, if the taxpayer is not occupying temporary quarters, as we have found here, neither the meals nor the lodgings are deductible. Sec. 217(b)(1)(D)↩.
8. Sec. 162(a) allows a deduction for "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Courts have consistently denied deductions for start-up or pre-opening expenses incurred by taxpayers prior to beginning business operations. See cases cited above. Courts denying deductions for pre-opening expenses have articulated two rationales for concluding that such expenses do not meet the sec. 162(a) criteria: (1) That the taxpayer was not "carrying on" a trade or business, Aboussie v. United States,779 F.2d 424, 428 (8th Cir. 1985); Richmond Television Corp. v. United States,345 F.2d 901, 907 (4th Cir. 1965), revd. per curiam on other grounds 382 U.S. 68 (1965), or (2) that preopening expenses were not "ordinary" but capital in nature, Johnsen v. Commissioner,794 F.2d 1157, 1161 (6th Cir. 1986), revg. 83 T.C. 103 (1984); Madison Gas & Electric Co. v. Commissioner,633 F.2d 512, 517 (7th Cir. 1980), affg. 72 T.C. 521↩ (1979). However, because petitioner's own statements with regard to his activities make it clear that his expenditures were incurred in organizing, developing, or starting up a business, we need not base our conclusion on either rationale. Petitioner's expenditures would be nondeductible under either analysis.
9. SEC. 195. START-UP EXPENDITURES. (a) Election to Amortize. -- Start-up expenditures may, at the election of the taxpayer, be treated as deferred expenses. Such deferred expenses shall be allowed as a deduction ratably over such period of not less than 60 months as may be selected by the taxpayer (beginning with the month in which the business begins). (b) Start-Up Expenditures. -- For purposes of this section, the term "start-up expenditure" means any amount -- (1) paid or incurred in connection with -- (A) investigating the creation or acquisition of an active trade or business, or (B) creating an active trade or business, * * * (c) Election. -- (1) Time for making election. -- An election under subsection (a) shall be made not later than the time prescribed by law for filing the return for the taxable year in which the business begins (including extensions thereof). * * *↩
10. The parties orally agreed that any computation of income averaging under sec. 1301 for petitioners' 1981 tax year will be made under Rule 155.↩