JOSEPH AARON McMAHON III, [1] Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent McMahon v. Commissioner
Docket Nos. 29616-88, 7876-89
United States Tax Court
T.C. Memo 1991-355; 1991 Tax Ct. Memo LEXIS 404; 62 T.C.M. (CCH) 306; T.C.M. (RIA) 91355; July 31, 1991, Filed *404 Decisions will be entered under Rule 155. Petitioner failed to timely file Federal income tax returns for the taxable years 1983 through 1986. During the trial, petitioner filed income tax returns for the years in issue. Petitioner claimed business expenses on Schedule C of these returns. During the trial, petitioner's counsel stated that petitioner had changed his position with respect to these expenses and claimed that he was entitled to capital losses for these expenses. Held: Respondent's evidentiary objections are not sustained. Held further: Petitioner is not entitled to a loss for these expenses. Held further: Petitioner is liable for additions to tax pursuant to sections 6651(a)(1), 6653(a)(1) and (2), 6654, and 6661. Scott McLarty, for the petitioner. David R. Reid, for the respondent. WHITAKER, Judge. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in petitioner's Federal income tax returns and additions to tax as follows: Additions to Tax
Section
Section
Section
Year
Deficiencies
[2] 6651(a)(1) [3] 6653(a)(1) 6653(a)(2)
1983
$ 6,157
$ 1,012.25
$ 307.85
* *405 1984
6,238
1,262.25
314.15
*
1985
3,977
994.25
198.85
*
1986
6,608
1,652.00
330.40
*
Section
Section
Year
6654
6661
1983
$ 215.48
$ 1,539.25
1984
298.03
1,570.75
1985
227.89
--
1986
320.00
--
After concessions, the issues for decision are: (1) Whether respondent's evidentiary objections should be sustained. We hold that respondent's evidentiary objections should not be sustained. (2) Whether petitioner is entitled to a loss for the expenses claimed on his Federal income tax returns for the years in issue. We hold that petitioner is not entitled to a loss for these expenses. (3) Whether petitioner is liable for additions to tax pursuant to sections 6651(a)(1) and 6654 for 1983 through 1986, section 6653(a)(1) and (2) for 1983 through 1985, section 6653(a)(1)(A) and (B) for 1986, and section 6661 for 1983 and 1984. We hold that petitioner *406 is liable for these additions to tax.
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations and attached exhibits are incorporated herein by this reference. Petitioner, Joseph Aaron McMahon III, resided in Dublin, Georgia, at the time he filed his petitions in this case. Petitioner holds a master of business administration degree. During the years in issue, petitioner was employed full time in different corporations. In 1983 petitioner received income from Cracker Barrel Old Country Store, Inc., in the amount of $ 26,361. In 1984 petitioner received income from Cracker Barrel Old Country Store, Inc., and from Southern Hospitality Corporation in the amounts of $ 10,954 and $ 16,566, respectively. In 1985 petitioner received income in the amount of $ 21,450. The record does not indicate the name of petitioner's employer for that year. In 1986 petitioner received income from American Directory Company and Orkin Exterminating, Inc., in the amounts of $ 19,953 and $ 9,363, respectively. Petitioner also received interest income from Fidelity Federal Savings and Loan Association of Tennessee in the amount of $ 26 in 1983, and from Prudential Insurance *407 Company of America in the amounts of $ 12 and $ 29 in 1984, and $ 47 in 1985. In addition to this employment, petitioner became engaged in two business ventures during the years in issue. In 1982 petitioner was induced by a developer of high-mileage carburetors for automobiles to invest in distributorships for these carburetors. Petitioner paid $ 4,800 in 1983, $ 4,800 in 1984, $ 1,000 in 1985, and $ 2,500 in 1986 for the right to reserve territories in which to distribute these carburetors in designated market areas. The market areas included Tennessee, Georgia, Alabama, South Carolina, North Carolina, Missouri, Arkansas, Louisiana, and Kentucky. Petitioner anticipated making these distributorships a permanent business and eventually leaving his other employment. In 1982, 1983, and 1984, petitioner sent information about the carburetor and questionnaires to approximately 3,000 service station and automobile parts-store owners located in the market areas he purchased. The copying work for this material was performed by Kinko's Copies. During the years in issue, petitioner traveled from his home in Lebanon, Tennessee, to Memphis, Tennessee, by automobile to confer with a friend *408 about the distributorships. They traveled to different cities in the market areas he had purchased to look for possible installation sites, vacant service stations, and vacant garages. Petitioner also traveled to Tennessee, North Carolina, and Kentucky with his wife for the same purpose. In 1985 petitioner tested a model of the carburetor. After unsuccessful testing, petitioner became disillusioned with this venture. However, he purchased more market territories in 1985 and 1986 as noted above. In 1985 petitioner was induced by another company to become an independent sales representative of books. He sent information about the company and how someone could become a representative to various people. In 1986 petitioner became inactive in this venture when he heard the company was going bankrupt. In 1988 petitioner moved from Clarkston, Georgia, to Dublin, Georgia, to work for Orkin Exterminating, Inc. Petitioner hired Admiral Moving & Storage Company (Admiral Moving) to move his possessions. Petitioner packed his business records in a box. Somehow this box was lost. Prior to trial, petitioner did not file Federal income tax returns for the years in issue, and he did not pay *409 estimated taxes for the years in issue. Respondent prepared substitute returns for petitioner on or about October 27, 1986, October 27, 1986, April 6, 1987, and January 22, 1988, for the taxable years 1983 through 1986. These returns contained only petitioner's name, address, and Social Security number. Based on other information available to respondent, respondent issued statutory notices of deficiency, in which he determined deficiencies in petitioner's tax liability and additions to tax. Respondent computed petitioner's gross income from wages and interest, allowed one personal exemption for each year in issue, but did not allow any deductions for the years in issue. In his petitions, petitioner alleged that he is entitled to certain statutory deductions for the years in issue. Petitioner also alleged that "respondent failed to consider and give allowance for legitimate and proper deductions in arriving at deficiency determinations for the calendar years in question." In the answer, respondent denied this latter allegation for lack of sufficient information. On August 21, 1989, respondent received a copy of petitioner's Federal income tax returns for the years in issue. On *410 these returns, petitioner reported gross income in the amounts of $ 26,387, $ 27,561, $ 21,497, and $ 29,316, for the taxable years 1983, 1984, 1985, and 1986, respectively. This reported income reflected petitioner's wage and interest income. On Schedule C of the returns, petitioner claimed business expenses of $ 15,963.87, $ 14,056.20, $ 7,942, and $ 12,020.56 for the taxable years 1983, 1984, 1985, and 1986, respectively. The business expenses included advertising, car and truck, office, travel and entertainment, utilities and telephone, and other expenses. All of the expenses incurred in the taxable years 1983 through 1985 were in connection with the business venture involving the carburetor. All of the expenses incurred in the taxable year 1986, except the distributorship fee, were in connection with the book company. Petitioner did not report any income on Schedule C of his returns for the years in issue. The advertising expenses consist of the expenses for the copying work performed by Kinko's Copies, plus the cost of envelopes and postage. After his records were lost, petitioner contacted Kinko's Copies and requested that the company send him duplicate receipts showing *411 the amount he paid for the copying work performed by them during the years in issue. Petitioner offered into evidence these reconstructed receipts from Kinko's Copies which note the name and address of Kinko's Copies, the amount paid, the date, and the name and address of petitioner. On these receipts, petitioner made a notation to indicate the amount paid for envelopes and postage, but did not provide any other evidence of payment for these expenses. The travel expenses include an amount which was determined by multiplying miles traveled times a certain rate, such as 21 cents, a percentage of his car payment, and $ 10 a day for meals. Petitioner conceded that he could not substantiate these expenses under section 274. The utilities expenses were based on petitioner's estimation that he used a third of his utilities, electric and telephone, for his business undertaking, which amounted to $ 55 or $ 60 a month. Petitioner does not have any bills to substantiate these expenses. The office expenses were based on petitioner's estimation that he used approximately 25 to 33 percent of his home for business purposes which amounted to 25 to 33 percent of his rent. In the guest bedroom *412 of his home, petitioner stored the information he sent to service station and parts-store owners, a typewriter used for correspondence, and a telephone. This room also functioned as a guest bedroom for family visits. The other expenses were listed as distributor fees for Pogue-Fish-Witter carburetors of Witter, Inc. After his records were lost, petitioner contacted Mr. Witter of Witter, Inc., and requested that Mr. Witter send petitioner duplicate receipts showing the amount he paid for the distributorships during the years in issue. Petitioner offered into evidence these reconstructed receipts from Witter, Inc. The receipts indicate the amount paid, the territories purchased, the name and address of Witter, Inc., and that the amount paid was received from petitioner. On Schedule A of petitioner's 1985 return, he listed medical expenses of $ 4,394.28 and interest of $ 222 paid to Chrysler Credit Corporation, totaling $ 4,616.28, of which $ 1,076.28 was deducted from his gross income for that year. At the trial, respondent conceded that petitioner is entitled to deductions for medical expenses in the amount of $ 4,727.33 for the taxable year 1985 and $ 355 for the taxable year *413 1986. At the trial, respondent also conceded that petitioner is entitled to a miscellaneous deduction of $ 222 pertaining to interest expense charges paid to the Chrysler Credit Corporation for the taxable year 1985. On Form 4797 of petitioner's 1986 return, as prepared by petitioner, petitioner claimed an ordinary loss of $ 1,925 on the sale of a 1977 Ford LTD. Petitioner did not offer any evidence with respect to this claim. The parties orally stipulated during the trial that petitioner is entitled to a filing status of married, filing jointly for each of the years in issue; two exemptions in each of the years 1983 and 1984; three exemptions in each of the years 1985 and 1986, and the zero bracket amount in years in which petitioner did not itemize his deductions. Respondent has conceded that petitioner would be entitled to a medical expense deduction for the taxable year 1986. Petitioner did not itemize his deductions on Schedule A for that year. In the Rule 155 computations, the parties will make the necessary adjustments. OPINION Respondent objected to the admission of certain exhibits [4] on the grounds of lack of authentication, the best evidence rule, relevancy, and hearsay. *414 These exhibits are reconstructed receipts of expenses incurred by petitioner with respect to his business undertakings described above. Petitioner's arguments with respect to these objections are that the exhibits are his business records and that if respondent doubted the admissibility of these exhibits, respondent should have called other witnesses to substantiate the "perceived lack of validity." The requirement of authentication is a condition precedent to admissibility of the receipts. Rule 901, Fed. R. Evid. Evidence that will support a finding that the matter in question is what its proponent claims is sufficient to satisfy this requirement. Link v. Mercedes-Benz of North America, Inc., 788 F.2d 918 (3d Cir. 1986). In this case, petitioner testified that these are reconstructed receipts of his expenses. Contrary to respondent's contention, we find petitioner to be a credible witness and conclude that his testimony is sufficient to provide the foundation necessary for this Court to draw the inference that the evidence is what it is claimed to be. Petitioner lost his original records of his business *415 undertakings. Where the original writing is lost or destroyed, unless the proponent lost or destroyed the writings in bad faith, secondary evidence will suffice under Rule 1004 of the Federal Rules of Evidence. Petitioner has satisfactorily explained the loss of his original business records. We conclude that this loss was not due to bad faith on the part of petitioner and, therefore, the reconstructed receipts are admissible as secondary evidence. Respondent contends that the receipts are inadmissible hearsay to which the hearsay exception under Rule 803(6) of the Federal Rules of Evidence does not apply. Respondent argues that a custodian of the receipts or business records did not testify and, thereby, lay a foundation for the admissibility of the receipts. Business records prepared in the regular course of business generally are admissible in evidence. Rule 803(6), Fed. R. Evid. Such documents possess a high degree of trustworthiness, and the necessity of admitting them outweighs the inconvenience that would result in having the person who prepared the document testify. United States v. Hines, 564 F.2d 925 (10th Cir. 1977). The test of whether such records should be admitted *416 rests upon their reliability. See United States v. Hickey, 360 F.2d 127 (7th Cir. 1966). These receipts reflect payments made by petitioner for distributorships and are relevant to the issues at hand. Petitioner testified that he could not afford to have the promoter of the carburetor testify before this Court. Even though the receipts in evidence are reconstructed receipts, we conclude that they are reliable. In Hines, the court admitted into evidence an invoice even though the custodian was not available to testify. We conclude that these receipts are admissible under Rule 803(6) of the Federal Rules of Evidence.
Respondent's determinations are presumed correct, and petitioner bears the burden of showing such determinations to be incorrect. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142. On Schedule C of petitioner's tax returns, petitioner claimed business expenses for the years in issue. During the trial, petitioner's counsel stated that petitioner's position with respect to these expenses had changed. According to petitioner's counsel, petitioner would not be entitled to deduct these expenses as ordinary and necessary expenses of a trade *417 or business but would be entitled to capital losses up to $ 3,000 per year for these expenses. Respondent did not contest this change in position, and both parties agreed to address the issue as presented by petitioner. We must decide whether petitioner is entitled to a loss for these expenses. On brief, petitioner contends that he is entitled to the capital losses claimed for the years in issue. Petitioner concedes that many of the expenses sustained cannot be adequately supported by receipts, but argues that the manner in which they have been calculated is reasonable. Petitioner argues that he proved, with receipts, sufficient amounts to permit the allowance of the $ 3,000 capital loss for the years in issue. Petitioner concedes that he failed to substantiate the travel expenses under the strict substantiation requirements of section 274. Travel expenses include the costs of business travel away from home, including amounts spent for meals (with a limitation) and lodging, as long as these amounts are not lavish or extravagant. These expenses include transportation fares. Car and truck expenses include the operating expenses of a car or truck used in the business. The record *418 is not clear as to what amounts petitioner attributed to car and truck expenses and travel expenses. It appears that petitioner's travel expenses are listed as car and truck and travel expenses. Petitioner has not provided any records of these expenses. These expenses may not be estimated, but must be substantiated by accurate records or by sufficient evidence corroborating petitioner's testimony. Sec. 274. It is possible some of his records were lost in the move. However, such loss does not except him from the strict requirements under section 274. See sec. 1.274-5(c)(5), Income Tax Regs.[5] We conclude that petitioner failed to substantiate the travel and car and truck expenses and, therefore, is not entitled to any deduction or loss for these expenses. Generally, no deduction is allowed *419 for office and utilities expenses where the office is located in a taxpayer's home. Sec. 280A(a). However, there are a few limited exceptions to this rule. Section 280A(c) provides in part that a deduction is allowed for the use of a portion of a taxpayer's home which is exclusively used on a regular basis as the principal place of business for a trade or business of the taxpayer. Sec. 280A(c)(1)(A). We have found that the guest bedroom was not exclusively used on a regular basis for petitioner's business venture. Therefore, we conclude that petitioner is not entitled to a loss for the office and utilities expenses. The only record provided to substantiate the cost of postage and envelopes under advertising expenses is petitioner's notation on the duplicate receipts from Kinko's Copies. A deduction for postage and envelopes based on estimates is allowed where the Court is convinced from the record that deductible expenses have in fact been incurred. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); Afshar v. Commissioner, T.C. Memo 1981-241. In this case, we are not convinced that petitioner is entitled to any loss for these expenses because we are not convinced that petitioner *420 incurred the amount he claims, and the evidence does not afford any basis for approximation. Bale v. Commissioner, T.C. Memo 1973-227. The expenses incurred in 1986, other than the distributorship fees, were in connection with petitioner's book company venture. The record is insufficient to conclude that petitioner entered into the transaction for profit. For the reasons cited above, petitioner also failed to substantiate the expenses discussed above. Therefore, petitioner is not entitled to a loss for any of these expenses. Petitioner asserts that for 1983 he substantiated the printing expenses of $ 1,578 and the distributorship fees of $ 4,800 entitling him to a $ 3,000 capital loss for that year and a carryforward of $ 3,378. For 1984 petitioner asserts that he substantiated the printing expenses of $ 1,230 and distributorship fees of $ 4,800 entitling him to a capital loss of $ 3,000 with a carryforward of $ 3,030. For 1985 petitioner asserts that he substantiated the distributorship fees of $ 1,000 entitling him to a capital loss of $ 3,000. For 1986 petitioner asserts that he substantiated the printing expenses of $ 1,835.40 and distributorship fees of $ 2,500 entitling *421 him to a capital loss of $ 3,000. Respondent argues that petitioner has failed to provide substantiation for these expenses. Respondent also argues that the distributorship fees do not constitute a contract right; and even if we determined that a contract right existed, the contract right is not a capital asset; and even if we determined the contract right was a capital asset, there was no sale or exchange or abandonment of a capital asset. We agree with respondent that there was no sale or exchange of a capital asset with respect to the distributorship fees; therefore, petitioner is not entitled to a capital loss under section 1231. Petitioner does not claim that he is entitled to deductions under sections 162 or 212 for these expenses. Therefore, we do not need to focus on these two sections of the Internal Revenue Code. All of the expenses in 1983 through 1985 and the distributorship fee expenses in 1986 were incurred to investigate where potential customers might exist in his market areas and to start up a distributorship. Expenses incurred in the search for possible future investments or investigatory expenses are generally held to be insufficiently connected to income-producing *422 activity for their deduction to be permitted. Dean v. Commissioner, 56 T.C. 895, 902-903 (1971); Walet v. Commissioner, 31 T.C. 461, 471 (1958), affd. 272 F.2d 694 (5th Cir. 1959); Frank v. Commissioner, 20 T.C. 511, 514 (1953). The expenses in this case might be characterized as investigatory expenses. However, we believe that the copying expenses and possibly the distributorship fees are more appropriately characterized as start-up expenses which, upon election, are capitalized once the business is commenced under section 195. See Mid-State Products Co. v. Commissioner, 21 T.C. 696 (1954); Ward v. Commissioner, 20 T.C. 332 (1953), affd. 224 F.2d 547 (9th Cir. 1955); Pino v. Commissioner, T.C. Memo 1987-28; Domenie v. Commissioner, T.C. Memo 1975-94. The distributorship fees were payments toward the purchase of a business or a right to sell a product, the carburetor, once manufactured, in certain market areas. Section 165(c)(2) authorizes a deduction for losses incurred by individuals and not compensated for by insurance or otherwise which are "incurred in any transaction entered into for profit." Petitioner testified that he entered into this venture to make a profit and eventually *423 to leave his wage employment to work in the distributorship business full time. While petitioner never reported any income from his business undertaking, we believe that petitioner had a profit objective. Petitioner was attempting to form a new business and engaged in activities directly relevant and material to that formation with the objective to make a profit. Such expenses and activities are the type which constitute a transaction entered into for profit. Seed v. Commissioner, 52 T.C. 880, 885 (1969); Parker v. Commissioner, 1 T.C. 709 (1943); Domenie v. Commissioner, supra; Price v. Commissioner, T.C. Memo 1971-323. We noted in Seed v. Commissioner, supra at 885, a transaction entered into for profit means "something more than the mere casual preliminary investigation of a prospective business or investment." In Parker v. Commissioner, supra at 711, this Court stated that: The operations were preliminary to making arrangements for permanent operations, it is true. But they were actual operations and the fact that they did not result in a permanent undertaking does not take the transaction outside the statutory provision. * * *
Since petitioner was engaged in a transaction *424 entered into for profit, he would be entitled to a deduction under section 165(c)(2) for a loss in the year the project was abandoned. Sec. 1.165- 2(a), Income Tax Regs. [6] *426 Petitioner bears the burden of proving the year in which he abandoned his venture and the amount of the loss incurred as a consequence of such abandonment. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933). Abandonment is a question of intent. Bentley v. Commissioner, a Memorandum Opinion of this Court dated Dec. 11, 1952. An identifiable act indicative of such intent is required. Bentley v. Commissioner, supra. The amount of the loss is established. However, petitioner has not established that he abandoned the venture or in what year he abandoned the venture. Petitioner testified that he became disillusioned with the venture in 1985, but continued to buy more market territories in 1985 and 1986. There is no evidence that he abandoned the venture in 1986. Ladas v. Commissioner, T.C. Memo 1976-64; Price v. Commissioner, supra.There was no identifiable event which fixes the time when petitioner decided not to pursue the matter any further. See Harding v. Commissioner, T.C. Memo 1970-179. There *425 is no evidence that petitioner actually canceled or surrendered his distributorship agreements or that petitioner in any way relinquished his rights under those agreements. See International Educational Publishing Co. v. Commissioner, 30 B.T.A. 1090 (1934), affd. 79 F.2d 343 (3d Cir. 1935). Where the facts establish that property has no potential value, a loss deduction is allowed in the year the property becomes worthless even though there has been no identifiable act of abandonment. Bentley v. Commissioner, supra. The burden of proving the lack of such potential value is on petitioner. The record does not establish that the distributorship rights had no potential value. Accordingly, we hold that petitioner is not entitled to any loss for these expenses under section 165(c)(2). On Form 4797 of petitioner's 1986 tax return, petitioner claimed a loss of $ 1,925 due to the sale of a 1977 Ford LTD. Petitioner has failed to provide any substantiation for this loss and, therefore, we conclude that petitioner is not entitled to this loss. Respondent determined that petitioner was liable for additions to tax pursuant to section 6651(a)(1) for the years in issue because petitioner did not file returns for any of the years in issue until September 21, 1989. Any taxpayer who reports his income for the calendar year is generally required to file a return by April 15 of the following year. Secs. 6011(a), 6012(a), 6072(a). Absent a valid extension of time within which to file his return, a taxpayer who files after April 15 is liable for an addition to tax under section 6651(a)(1) unless he can show reasonable cause for failure to timely file. Petitioner has conceded that he *427 failed to file returns for the years in issue. His reason for not filing returns within the time required was based on constitutional grounds. Petitioner is a reformed tax protestor. Petitioner has not shown reasonable cause for failure to timely file. Accordingly, we hold that petitioner is liable for additions to tax pursuant to section 6651(a)(1) for the years in issue. Respondent contends that petitioner's underpayment of tax for the years in issue was due to negligence or intentional disregard of the rules and regulations pursuant to section 6653(a). Respondent argues that petitioner was a tax protestor during the years in issue and chose not to file returns for the years in issue due to constitutional concerns. Section 6653(a)(1), and for 1986, section 6653(a)(1)(A), imposes a 5-percent addition to tax on any underpayment of tax that is due to negligence or intentional disregard of the rules and regulations. Section 6653(a)(2), and for 1986, section 6653(a)(1)(B), provides for an addition to tax in an amount equal to 50 percent of the interest due on the portion of the underpayment attributable to negligence or intentional disregard of the rules and regulations. Petitioner *428 does not dispute the gross income alleged for the years in issue. Petitioner has conceded that the additions to tax under section 6653(a) are appropriate in this case. Accordingly, we hold that petitioner is liable for additions to tax pursuant to section 6653(a)(1) and (2) for the years 1983 through 1985 and pursuant to section 6653(a)(1)(A) and (B) for the year 1986. Respondent contends that petitioner is liable for additions to tax for the years in issue pursuant to section 6654(a) because petitioner underpaid estimated income tax payments for those years. Section 6654(a) provides for an addition to tax for failure to pay estimated income tax. Petitioner did not controvert respondent's assertion and offered no reason other than his constitutional argument for his failure to pay estimated income tax. Accordingly, we hold that petitioner is liable for additions to tax for the years in issue pursuant to section 6654(a). Respondent determined that petitioner is liable for additions to tax for the taxable years 1983 and 1984 pursuant to section 6661 because petitioner's liability for these years constituted a substantial understatement of income tax pursuant to section 6661(b). Section 6661 *429 provides for an addition to tax in the amount of 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax. A substantial understatement exists if the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year or $ 5,000. Sec. 6661(b)(1)(A). Petitioner has not controverted respondent's assertion of this addition to tax. Accordingly, we hold that petitioner is liable for additions to tax for the taxable years 1983 and 1984 pursuant to section 6661. Decisions will be entered under Rule 155. Footnotes
1. By Order dated August 10, 1989, these cases were consolidated for purposes of trial, briefing, and opinion.↩
2. Unless otherwise noted, all section references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
3. Respondent determined that petitioner is liable for the addition to tax under section 6653(a)(1) and (2) for negligence. The appropriate section for the taxable year 1986 is section 6653(a)(1)(A) and (B)↩.
*. 50% of the interest payable under section 6601 with respect to the portion of the underpayment to which section 6653(a)(1)↩ applies.
4. Respondent objected to the admission of Exhibits 13 through 18, 20, and 21.↩
5. Sec. 1.274-5(c)(5), Income Tax Regs., provides that where the taxpayer's records are lost due to fire, flood, earthquake, or other casualty, a reasonable reconstruction of these expenses is allowed. The loss during the move does not qualify under this section, and petitioner has failed to provide a reasonable reconstruction of these expenses. Davies v. Commissioner, T.C. Memo 1986-248↩.
6. Section 1.165-2(a), Income Tax Regs., provides: (a) Allowance of deduction. A loss incurred in a business or in a transaction entered into for profit and arising from the sudden termination of the usefulness in such business or transaction of any nondepreciable property, in a case where such business or transaction is discontinued or when such property is permanently discarded from use therein, shall be allowed as a deduction under section 165(a)↩ for the taxable year in which the loss is actually sustained. For this purpose, the taxable year in which the loss is sustained is not necessarily the taxable year in which the overt act of abandonment, or the loss of title to the property, occurs.