T.C. Summary Opinion 2015-24

UNITED STATES TAX COURT

PADRAIC WILLIAM BURKE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19391-12S.                    Filed March 31, 2015.

Padraic William Burke, pro se.

<u>Julie L. Payne</u>, <u>Alicia H. Eyler</u>, and <u>My V. Vo</u>, for respondent.

SUMMARY OPINION

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are

to the Internal Revenue Code (Code) in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined Federal income tax deficiencies and accuracy-related penalties as follows:

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|---------------------|
| 2007 | $12,966 | $2,593.20 |
| 2008 | 6,780 | 1,356.00 |
| 2009 | 5,893 | 1,178.60 |

After concessions, the issues for decision are: (1) whether petitioner omitted gross income from his 2009 income tax return; (2) whether petitioner is entitled to deductions claimed on Schedules C, Profit or Loss From Business, for the years in issue; and (3) whether petitioner is liable for accuracy-related penalties under section 6662(a) for the years in issue.

## Background

Some of the facts have been stipulated, and we incorporate the stipulation of facts and the stipulation of settled issues by this reference. At the time the petition was filed, petitioner resided in the Laos People's Democratic Republic.

During the taxable years in issue, petitioner owned and operated a land use consulting business that helped landowners create special evaluations (similar to

conservation easements for property taxes) in Washington and conservation easements in Washington and Nebraska. The conservation easements were then donated to petitioner's own section 501(c)(3) tax-exempt organization, Northwest Conservation Stewardship Fund. On September 12, 2012, in a stipulated decision executed by the parties and entered by the Tax Court, it was decided that as of January 1, 2003, Northwest Conservation Stewardship Fund was not qualified as an organization described in section 501(c)(3) and is not exempt from taxation under section 501(a). See Nw. Conservation Stewardship Fund v. Commissioner, T.C. Dkt. No. 6521-11X (Sept. 12, 2012).

Petitioner had had a home office since he started his land use consulting business in the 1980s. In 1981 petitioner set up a private office in Pioneer Square in Seattle, Washington. Sometime in the mid-1980s Northwest Conservation Stewardship Fund started paying some expenses including rent, phone bills, and Internet service at the Pioneer Square office. In either 2003 or 2004 the Pioneer Square office became the principal office of Northwest Conservation Stewardship Fund. Petitioner continued to occasionally use the Pioneer Square, office for his consulting business as well. Petitioner met clients related to his consulting business at the Pioneer Square office and used the Pioneer Square office as his business address for his consulting business for all of the years in issue. Petitioner

met the revenue agent at the Pioneer Square office when the revenue agent examined petitioner's 2007, 2008, and 2009 tax returns.

Petitioner used the Pioneer Square office approximately 109 days a year. Petitioner's consulting business generally required him to view the clients' property, so petitioner mainly met his clients at the clients' property locations. Petitioner consulted with clients at his home between 5 and 10 times a year. In each of petitioner's residences for the years in issue, petitioner sometimes used some space to conduct his land use consulting business.

In 2007 and 2008 petitioner used one bedroom in a two-bedroom house as a home office. The bedroom was approximately 300 square feet and contained a desk, a chair, and three or four filing cabinets. The desk in this room was not petitioner's desk; he had another desk in the dining room alcove. There was only about enough space in this room to get at the desk and the filing cabinets. Petitioner's home in 2007 and 2008 was approximately 1,800 square feet.

In 2009 petitioner lived at two different homes. From January through June 2009 petitioner lived on Country Club Road. The Country Club Road house had three bedrooms and a basement. From July through December 2009 petitioner lived in Lynnwood. The Lynnwood house had four bedrooms.

In 2008 and 2009 petitioner began to develop a business in student association development consulting in addition to his existing business in land use consulting. This activity was conducted through an organization that petitioner created called the U.S./Libyan Education Facilitator. In 2008 petitioner went to Libya to help Libyan students come to the United States for postgraduate education. Petitioner created a Web page for this business. Petitioner did not receive any income from this activity.

While in Libya in 2008, petitioner visited some Greek and Italian ruins. Petitioner wrote a paper about these ruins and submitted it to an international conference on conservation in the Middle East.

Petitioner received $20,000 from Northwest Conservation Stewardship Fund in 2009. Respondent determined that $19,308 of these proceeds were additional Schedule C gross receipts not reported as income on petitioner's 2009 tax return.

Petitioner reported multiple expenses on his Schedules C for the years in issue including car and truck expenses, legal and professional expenses, office expenses, travel expenses, other expenses, and expenses for the business use of his home that are in dispute. Petitioner claimed on his 2007, 2008, and 2009 tax returns that he used 25% of his home as a home office. To the extent petitioner

presented records of his activities, said records were disorganized. Likewise, petitioner's testimony was quite disorganized.

Petitioner claimed deductions for the following expenses that are still in dispute on his 2007, 2008, and 2009 Schedules C for his consulting business, and respondent allowed the following amounts:

2007

|  | Claimed | Allowed |
|---|---|---|
| Car and Truck | $12,653 | $6,053 |
| Legal and Professional | 6,774 | 2,243 |
| Office | 7,750 | 1,039 |
| Travel | 9,975 | --- |
| Travel, meals and ent. | 2,337 | [1]4,232 |
| Other | 51,548 | 42,365 |
| Business use of home | 6,800 | --- |
| Total | 97,837 | 55,932 |

2008

|  | Claimed | Allowed |
|---|---|---|
| Car and Truck | $13,015 | $6,609 |
| Office | 9,742 | --- |
| Travel | 13,732 | [2]6,422 |
| Other | 9,191 | 1,832 |
| Business use of home | 850 | --- |
| Total | 46,530 | 14,863 |

2009

|  | Claimed | Allowed |
|---|---|---|
| Car and Truck | $5,710 | $3,338 |
| Office | 14,734 | --- |
| Other | 6,894 | 4,654 |
| Business use of home | 5,698 | --- |
| Total | 33,036 | 7,992 |

[1]Petitioner claimed on his 2007 tax return $9,975 for travel expenses and $2,337 for meals and entertainment expenses. Respondent allowed $4,232 of travel and meals and entertainment expenses.
[2]The travel expenses respondent disallowed for 2008 are related to petitioner's travel to Libya.

Discussion

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct,[1] and the taxpayer bears the burden of proving that the determination is in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioner did not allege or otherwise show that section 7491(a) applies. See sec. 7491(a)(2)(A) and (B). Therefore, petitioner bears the burden of proof. See Rule 142(a).

A taxpayer must substantiate amounts claimed as deductions by maintaining the records necessary to establish he or she is entitled to the deductions. Sec. 6001. Section 162(a) provides a deduction for certain business-related expenses. To qualify for the deduction under section 162(a), "an item must (1) be 'paid or incurred during the taxable year,' (2) be for 'carrying on any trade or business,' (3) be an 'expense,' (4) be a 'necessary' expense, and (5) be an 'ordinary' expense." Commissioner v. Lincoln Sav. & Loan Ass'n, 403 U.S. 345, 352 (1971); Deputy v. du Pont, 308 U.S. 488, 495 (1940) (to qualify as "ordinary", the expense must relate to a transaction "of common or frequent occurrence in the type of business

---

[1]To the extent respondent determined omitted income, the presumption of correctness does not play any role in our decision. See the discussion relating to Schedule C gross receipts, infra pp. 8-9.

involved"). Whether an expense is ordinary is determined by time, place, and circumstance. Welch v. Helvering, 290 U.S. at 113-114.

Section 274(d) applies to certain business expenses including, among other things, expenses for gifts, listed property, and travel (including meals and lodging while away from home). To substantiate travel expenses, a taxpayer must maintain adequate records or present corroborative evidence of his own statement to show the following: (1) the amount of each travel expense; (2) the time and place of travel; and (3) the business purpose for travel. Sec. 1.274-5T(b)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

## I.     Schedule C Gross Receipts--2009

On February 10, 2014, respondent filed his first request for admissions. The request for admissions included the statements "Petitioner reported $38,500.00 in Schedule C1 Gross receipts for taxable year 2009." and "Petitioner had Schedule C1 Gross receipts of $57,808 for taxable year 2009." Petitioner admitted both of these facts in his response to requests for admission filed on March 10, 2014. Under Rule 90(f), the facts petitioner admitted in the response to requests for

admission are conclusively established and are so found. Therefore, respondent's

determination of $19,308 of unreported income is sustained.[2]

II.     Schedule C Car and Truck Expenses--2007, 2008 and 2009

Petitioner testified that he drove 470 miles[3] from Chelan to Bainbridge

Island, Washington, and back 23 to 25 times in 2007. The business mileage rate in

2007 was 48.5 cents per mile. Rev. Proc. 2006-49, sec. 2, 2006-2 C.B. 936, 937.

If petitioner drove 470 miles 25 times in 2007, his car and truck expense using the

standard mileage rate would be $5,699. Respondent has allowed a deduction of

$6,053 for car and truck expenses for 2007. Respondent estimated the business

mileage using petitioner's calendar and allowing petitioner the standard mileage

---

[2]Even without this admission, respondent's determination in this regard would be sustained. Petitioner claimed that the additional gross receipts were actually loan repayments. To support this position petitioner provided three checks totaling $20,000. The memo section of two of the checks stated that the checks were for repayment of loans. Petitioner also presented an unsigned copy of the Form 990 Return of Organization Exempt From Income Tax, for Northwest Conservation Stewardship Fund for 2009. The Form 990 showed that the loan from petitioner had increased during 2009. In addition, the Form 990 showed that there was a written agreement for this loan. Petitioner did not produce a copy of this loan agreement. By his own admission, petitioner did not report any interest income from a loan to Northwest Conservation Stewardship Fund. We would not conclude on the basis of this record that the payments from Northwest Conservation Stewardship Fund were repayments of a loan.

[3]The Court makes no conclusion regarding the actual distance between Chelan and Bainbridge Island, Washington.

rate. Petitioner has failed to establish that he is entitled to a deduction for car and truck expenses based on mileage greater than the amount respondent allowed.

Petitioner also provided a list of ferry expenses totaling $4,551. These ferry expenses were not included in the amounts respondent allowed because those amounts were calculated purely on the basis of estimated mileage petitioner traveled. We are satisfied that petitioner has met the strict substantiation requirements of section 274(d) for the ferry expenses by providing a combination of testimony and a list of amounts charged to his credit card by WS Ferries. The Court sustains respondent's disallowance of the deduction for car and truck expenses greater than $10,604 for 2007.[4]

Petitioner did not attempt to substantiate his car and truck expenses for 2008 or 2009 or otherwise provide evidence disputing respondent's determinations for those years. Accordingly, the disallowed amounts for car and truck expenses for 2008 and 2009 are deemed conceded by petitioner. See Rule 149(b).

III.    Schedule C Legal and Professional Expenses--2007

Other than providing some evidence of legal and professional expenses related to a settled issue, petitioner did not substantiate his legal and professional expenses for 2007 or otherwise provide evidence disputing respondent's

---

[4]$6,053 allowed by respondent + $4,551 of ferry expenses = $10,604.

determination for 2007.[5] Accordingly, the disallowed amounts for legal and professional expenses for 2007 are deemed conceded by petitioner. See id.

IV.     Schedule C Office Expenses--2007, 2008 and 2009

Petitioner did not substantiate his office expenses for 2007, 2008, or 2009 or otherwise provide evidence disputing respondent's determinations for those years. Accordingly, the disallowed amounts for office expenses for 2007, 2008 and 2009 are deemed conceded by petitioner. See id.

V.     Schedule C Travel and Meals and Entertainment Expenses--2007

Petitioner did not substantiate his travel and meals and entertainment expenses for 2007 or otherwise provide evidence disputing respondent's determinations for 2007. Accordingly, the disallowed amounts for travel and meals and entertainment expenses in 2007 are deemed conceded by petitioner. See id.

VI.     Schedule C Travel Expenses--2008

The travel expenses respondent disallowed for 2008 relate to petitioner's travel to Libya. Petitioner engaged in two activities in Libya which could potentially permit part or all of his expenses to be deductible as ordinary and

[5]The legal and professional expenses related to the settled issue are not deductible on petitioner's Schedule C because petitioner agreed to capitalize them.

necessary business expenses under section 162. First, in 2008 and 2009 petitioner began to develop a business in student association development consulting. In 2008 petitioner traveled to Libya to help Libyan students come to the United States for postgraduate education. Second, petitioner appears to argue that the travel expenses should be deductible as an ordinary and necessary expense of his land use consulting business because he wrote a paper about some ruins that he visited in Libya.

A.      Student Association Development Consulting Business

First we analyze whether the expenses for the travel to Libya are deductible because petitioner was developing a business in student association development consulting. Section 162(a) allows a deduction for ordinary and necessary expenses incurred in "carrying on any trade or business." The phrase "carrying on any trade or business" means that a taxpayer may take advantage of the provision only for an operational existing business. Pino v. Commissioner, T.C. Memo. 1987-28. Generally, preoperational expenses are not deductible under section 162(a). Id. Petitioner did not receive any income from student association development consulting. There are no facts in the record indicating that this activity became operational. Therefore, petitioner was not engaged in an active trade or business of student association development consulting. The expenses for

the travel to Libya related to the investigation or development of petitioner's potential student association development consulting business are not deductible under section 162(a).

B.    Land Use Consulting Business

Next we analyze whether the expenses related to the travel to Libya are deductible with respect to petitioner's land use consulting business. Petitioner appears to argue that they are ordinary and necessary business expenses since he wrote a paper about Greek and Italian ruins that he visited during the trip. Petitioner has the burden of proving that these travel expenses are ordinary and necessary expenses proximately related to petitioner's trade or business. See Mack v. Commissioner, T.C. Memo. 1976-359. Considering that petitioner's land use consulting business related to special valuations in Washington and conservation easements in Washington and Nebraska, petitioner's trip to Libya to write a paper about Greek and Italian ruins does not appear to be related to petitioner's land use consulting business. Therefore, the expenses for travel to Libya are not deductible because they are not sufficiently related to petitioner's land use consulting business. The Court sustains respondent's disallowance of the deduction for travel expenses greater than $6,422 for 2008.

VII.   Schedule C Other Expenses--2007, 2008 and 2009

Petitioner did not substantiate his other expenses for 2007, 2008, or 2009 or otherwise provide evidence disputing respondent's determinations for those years. Accordingly, the disallowed amounts for other expenses for 2007, 2008, and 2009 are deemed conceded by petitioner.  See Rule 149(b).

VIII.   Schedule C Business Use of Home Expenses -- 2007, 2008, 2009

In general, a taxpayer is not entitled to deduct any expenses related to the taxpayer's use of a dwelling unit as a residence during the taxable year.  See sec. 280A(a).  However, expenses attributable to a home office are excepted from this general rule if the expenses are allocable to a portion of the residence which is exclusively used on a regular basis as the principal place of business for the taxpayer's trade or business.  See sec. 280A(c)(1)(A).  Expenses attributable to a home office are also excepted from the general rule if the expenses are allocable to a portion of the residence which is exclusively used on a regular basis by clients in meeting with the taxpayer in the normal course of his trade or business.  See sec. 280A(c)(1)(B).

A.   Exclusively Used

Petitioner testified that he used the Pioneer Square office exclusively for Northwest Conservation Stewardship Fund and his home office exclusively for his

consulting business. Petitioner's testimony was disorganized and sometimes inconsistent. Petitioner's testimony was also inconsistent with the filed stipulation of facts. In addition, the activities of Northwest Conservation Stewardship Fund and petitioner's land use consulting business are so interrelated and intermingled that it is unlikely that petitioner could have bifurcated the work done for one versus the work done for the other at separate offices. We are not required to find petitioner's self-serving and unsupported testimony to be sufficient to prove that petitioner used his home office exclusively for his consulting business. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Because the record lacks any evidence other than petitioner's self-serving testimony, we conclude that petitioner has not met the burden of proving that he used his home office exclusively for his consulting business. Petitioner is therefore not entitled to a home office deduction under either section 280A(c)(1)(A) or (B).

B.    Principal Place of Business

As an alternative reason to disallow the home office expenses because petitioner does not meet the requirements of section 280A(c)(1)(A), we analyze whether petitioner met his burden of proving that his home office was the principal place of business of his land use consulting business. In deciding whether a residence is the principal place of business, we compare the business

use of the residence to the business use of all of the other places where business is transacted. See Commissioner v. Soliman, 506 U.S. 168, 174 (1993). The Supreme Court laid out a two-part test to determine whether a taxpayer's residence qualifies as a principal place of business: (1) the relative importance of the activities undertaken at each business location and (2) the time spent at each location. Id. at 175. A principal place of business also includes "a place of business which is used by the taxpayer for the administrative or management activities of any trade or business of the taxpayer if there is no other fixed location of such trade or business where the taxpayer conducts substantial administrative or management activities of such trade or business." Sec. 280A(c)(1).

In addition to petitioner's home office, petitioner used the Pioneer Square office for his consulting business and met his clients at their property locations. Petitioner did not provide any evidence as to the business activities that he performed in his home office or the Pioneer Square office. Petitioner also did not provide any evidence regarding the amount of time that he spent at his home office or at his clients' properties. Therefore, we conclude that petitioner did not meet his burden of proving that his home office was the principal place of business for his consulting business.

C.      <u>Used on a Regular Basis for Meeting Clients</u>

As an alternative reason to disallow the home office expenses under section 280(a)(1)(B), we analyze whether petitioner met his burden of proving that he regularly used his home office to meet clients of his land use consulting business. In order for petitioner to prove that he used his home office regularly to meet his clients, he must prove that he met his clients in his home more often than incidentally or occasionally. <u>See</u> <u>Jackson v. Commissioner</u>, 76 T.C. 696, 700 (1981). Petitioner consulted with clients at his home between 5 and 10 times a year. Meeting clients in a home office only 5 or 10 times a year does not rise to the level of regularly using a home office to meet clients. Therefore, we conclude that petitioner used his home only occasionally to meet his clients and did not meet clients at his home regularly.

D.      <u>Conclusion Regarding Home Office Expenses</u>

Because we conclude that petitioner failed to establish that (1) he used his home office exclusively for his consulting business, (2) his home office was the principal place of business for his consulting business and (3) he regularly met clients at his home, petitioner is not entitled to a home office deduction for 2007, 2008, or 2009. Respondent's determinations in this regard are sustained.

IX.   Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) imposes a penalty of 20% of the portion of an underpayment of tax attributable to the taxpayer's negligence, disregard of rules or regulations, or substantial understatement of income tax.  "Negligence" includes any failure to make a reasonable attempt to comply with the Code, including any failure to keep adequate books and records or to substantiate items properly.  See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  A "substantial understatement" is an understatement of income tax that exceeds the greater of 10% of the tax required to be shown on the return or $5,000.  See sec. 6662(d); sec. 1.6662-4(b), Income Tax Regs.

The section 6662(a) accuracy-related penalty does not apply with respect to any portion of an underpayment if the taxpayer proves that there was reasonable cause for such portion and that he acted in good faith with respect thereto.  Sec. 6664(c)(1).  The determination of whether a taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including the taxpayer's efforts to assess the proper tax liability; the knowledge and the experience of the taxpayer; and any reliance on the advice of a professional, such as an accountant.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Generally, the most

important factor is the taxpayer's effort to assess the taxpayer's proper tax liability. Id.

The Commissioner has the burden of production under section 7491(c) with respect to the accuracy-related penalty under section 6662. To satisfy that burden, the Commissioner must produce sufficient evidence showing that it is appropriate to impose the penalty. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Respondent determined the accuracy-related penalty for each year was due to negligence or a substantial understatement of income tax.[6] Respondent has satisfied his burden by producing evidence that petitioner failed to maintain adequate books and records. Accordingly, because respondent has met his burden of production, petitioner must come forward with persuasive evidence that the accuracy-related penalties should not be imposed with respect to the underpayments because he acted with reasonable cause and in good faith. See sec. 6664(c)(1); Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-447.

---

[6]After respondent's concessions and the allowance of the ferry expenses, it is unclear whether any or all of petitioner's understatements exceed the greater of $5,000 and 10% of the tax required to be shown on the return for the applicable year and are thus substantial understatements as defined by sec. 6662(d)(1). In any event, we conclude that the underpayments of tax were due to negligence. See sec. 6662(c).

Petitioner failed to report income and to provide evidence of most of the reported expenses on Schedules C. Petitioner has not demonstrated that he acted with reasonable cause and in good faith with respect to the recordkeeping requirements; therefore, the Court sustains respondent's determinations on this issue.

We have considered all of the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.